**Leo L. PHILLIPS, Plaintiff, P. R. Enslow, Appellant,**

**v.**

**Floyd OSBORNE et al., Defendants-Appellees.**

**No. 24112.**

United States Court of Appeals, Ninth Circuit.

May 13, 1971.

---

William C. Klein, Vancouver, Wash., MacDonald, Hoague & Bayles, Seattle, Wash., Willner, Bennett & Leonard, Portland, Or., for appellant.

Bassett, Donaldson & Hafer, Seattle, Wash., for appellee.

Before MADDEN,* Judge of the United States Court of Claims, and DUNIWAY and KILKENNY, Circuit Judges.

## J. WARREN MADDEN, Judge:

We narrate the history of prior litigation which history is relevant to the instant case. On October 15, 1964, the complaint in a case entitled Phillips v. Osborne, in the same United States District Court from which the instant appeal comes to us, was served upon Osborne and the other defendants in that case. The complaint alleged that on September 24, 1964, the defendants had transferred approximately $40,000 of the assets of Local 580, International Brotherhood of Pulp, Sulphite and Paper Mill Workers, (hereinafter called "International") into escrow in violation of Local 580's constitution and by-laws, and in violation of Section 501(a) of the Labor-Management Reporting and Disclosure Act of 1959 (the Landrum-Griffin Act). The complaint prayed for distribution of the $40,000 of assets among the members of Local 580 as of September 26, 1964. The fact was that at or about the date mentioned the members of Local 580 were in the process of rebellion against their International and of form-ing a Local of another Union, Western Pulp and Paper Workers, (hereinafter called "Western"). Their Local of Western was also numbered 580.

The 1964 case was tried by the Judge of the District Court who made Findings of Fact and Conclusions of Law, dated October 27, 1966. We quote what the Trial Judge designated as "Conclusions of Law" because of their importance in the consideration of the instant appeal.

"9. This Court has subject matter jurisdiction over the instant controversy pursuant to Section 501 of the Act.

10. The action of the membership (in which Plaintiff participated) of International Local 580 in demanding a return of the funds of Local 580, constituted an adequate "request" within the meaning of Section 501.

11. In the particular circumstances of this case, a reasonable time within which Plaintiff was required to file his action expired upon the conclusion of the disaffiliation meeting on September 26, 1964. Since this action was not filed until October 13, 1964, it was not filed within a reasonable time as required by Section 501 of the Act.

12. In order to qualify as an eligible plaintiff under Section 501, the plaintiff must be a member of the Union at the time of the commencement of the action.

13. The Plaintiff Phillips, by voting in favor of disaffiliation from International Local 580, by voting in favor of affiliation with Western Local 580, and by accepting office as president of Western Local 580, unequivocally indicated his withdrawal from International Local 580 and his intent and purpose to be a member and first officer of a rival Local union affiliated with Western. While Phillips was a member of International Local 580 at the first meeting on September 26,

---

* Honorable J. Warren Madden, Senior Judge, United States Court of Claims, sitting by designation.

1964, by reason of his actions during the following meetings that day, he was not a member of the International Local 580 within the meaning of Section 501(b) at the end of that day. Hence Plaintiff Phillips has no standing to bring this suit.

DONE IN OPEN COURT, this 27th day of October, 1966.

/s/ George H. Boldt
_____
United States District Judge

Presented by:

/s/ Hugh Hafer
_____
HUGH HAFER, Counsel for Defendants."

The judgment of the Trial Court was as follows:

"Civil No. 3180

JUDGMENT

IT IS ORDERED, ADJUDGED, AND DECREED that this case be and the same is hereby dismissed with prejudice. Costs in the amount of $40.20 are awarded in favor of Defendants and against the Plaintiff.

DONE IN OPEN COURT, this 27th day of October, 1966.

/s/ George H. Boldt
_____
United States District Judge"

The plaintiffs in the 1964 case appealed to this Court from the judgment, adverse to them, of the District Court. Phillips v. Osborne, 403 F.2d 826 (C.A. 9, 1968). This Court affirmed the judgment. In this Court's opinion the following language appears.

At page 831: In the light of Phillips' relation with Western, other considerations lead us to agree that he, at the time he filed his suit, was not a "member" of International within the meaning of Section 501(b).

At page 832: In requesting direct relief for certain Union members only and not "for the benefit of the labor organization" Phillips disqualified himself from proceeding under Section 501.

At page 828: Hence, statutes extending federal jurisdiction, such as Section 501(b) are narrowly construed so as not to reach beyond the limits intended by Congress. [citations] * * * Such a construction is especially appropriate when, as here, the statute generally concerns rights subject to full and satisfactory vindication in state courts.

At page 828, fn 2: The appellant has failed to explain why a state court may not satisfactorily determine the ownership of the funds involved in the present controversy.

On December 6, 1968, P. R. Enslow filed, in the Superior Court of Cowlitz County, in the State of Washington, a suit against the same persons who had been the defendants in the 1964 suit by Phillips in the United States District Court, the history of which suit is narrated above. The Enslow suit alleged that the defendants, on September 24, 1964, placed the assets of Local 580, consisting of approximately $40,000, into escrow without complying with Local 580's by-laws. This suit will be called, hereinafter, the "state court action." This action prayed for distribution of the $40,000 to the members of Local 580 as of September 26, 1964, pursuant to a motion passed by the members on that date.

Plaintiff, in the Federal Court action, described hereinabove in this opinion, was Phillips, who at the time he brought that action was president of Local 580 of Western, which we might call the rebel Union. The plaintiff in the state court action was Enslow, who had succeeded Phillips as president of Local 580 of Western.

On January 15, 1969, Osborne and others, the defendants in the state court action, moved, pursuant to 28 U.S.C. § 1651, and § 2283, to enjoin Enslow and the other plaintiffs in the state court action from proceeding with the state court lawsuit against them. The asserted grounds for the motion were that the state court action was an attempted relitigation of Phillips v. Osborne, the federal court litigation begun in 1964,

which ended in the decision in this court in 403 F.2d 826. Osborne's motion for an injunction was opposed by the plaintiff in the state court action. After argument, the same Federal District Court Judge who had decided the 1964 case described earlier in this opinion, granted the requested injunction. Enslow, the plaintiff in the state court action thereupon appealed to this court, and it is that appeal with which we are here concerned.

Enslow, the appellant, in his brief states the "Question Presented" as follows:

Does the decision of this court that Phillips had no standing to bring a suit under the Landrum-Griffin Act to recover certain funds prevent Enloe (sic) from seeking to recover the same funds under the common law of contracts of the State of Washington?

The Appellee Osborne, in his brief, says:

The District Court had jurisdiction under 28 U.S.C. § 2283 and 28 U.S.C. § 1651 to protect and effectuate its final decree by enjoining relitigation of the case in state court.

We regard our question as being the following:

Whether a United States District Court may treat as having been litigated and decided by it, a question which was not in fact either litigated or decided, was not regarded by the parties to the District Court suit as being either litigated or decided, and was not regarded by this Court, when the District Court's decision was brought to this Court on appeal, as having been either litigated or decided?

Lest the question as just above stated be regarded as a "loaded" question, of

which the answer is obvious, we hasten to add that it is a not infrequent occurrence in the law for some matter which never came to the surface in litigation to be enmeshed, by operation of legal doctrine, in the decision in the case and to be concluded by it.

Our case involves an injunction issued by a Federal Court, forbidding State Court litigation to proceed. The fundamental quality of the problem is immediate and obvious, and has had the attention of the Supreme Court of the United States within recent weeks. In the case of Younger v. Harris, 401 U.S. 37, 91 S. Ct. 746, 27 L.Ed.2d 669 (1971) Mr. Justice Black, for that court, traced the history of Federal Court injunctions against state judicial proceedings. He reminded that:

Since the beginning of this Country's history Congress has, subject to few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts. In 1793 an Act unconditionally provided: " * * * nor shall a writ of injunction be granted to stay proceedings in any court of any state * * *." 1 Stat. 335 c. 22. A comparison of the 1793 Act with 28 U.S. C. § 2283, its present-day successor, graphically illustrates how few and minor have been the exceptions granted from the flat, prohibitory language of the old Act.

Justice Black points out that during all the years from 1793 to 1970 Congress has enacted only three exceptions to the original statute.

The *Younger* case, *supra,* and the several companion cases,[1] decided the same day, all involved injunctions against state criminal prosecutions. But we are unable to think of any reason why the flat "hands-off" policy enacted in 1793,

---

1. Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696. Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 24 L.Ed.2d 701. Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688. Byrne v. Karalexis, 401 U.S. 216, 91 S.Ct. 777, 24 L.Ed.2d 792.

and the three exceptions enacted since 1793 should be applied more strictly to prevent Federal Court interference with state criminal proceedings than with state civil or other proceedings. Indeed, the difference in treatment would more naturally run in the other direction. The state criminal proceedings in the *Younger* group of cases, involved prosecutions allegedly in violation of Constitutional rights, where the fact of the prosecution itself would have some "chilling effect" upon the exercise by the defendant, and others of the asserted rights.

In *Younger, supra,* Justice Black said, 401 U.S. p. 44, 91 S.Ct. p. 750:

> This underlying reason for restraining courts of equity from interfering with criminal prosecutions is reinforced by an *even more vital* (emphasis supplied) consideration, the notion of "comity," that is a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways. * * * It should never be forgotten that this slogan, "Our Federalism" born in the early struggling days of our Union of States occupies a highly important place in our Nation's history and its future.

We turn again to the appellee's contention that the District Court had jurisdiction to enjoin the Washington state court proceeding "to protect and effectuate its final decree," against relitigation. We have seen the District Court's findings of fact and conclusions of law which were prepared by counsel for Osborne, who prevailed in that Federal District Court case. There is no intimation in the findings that the Court was deciding anything other than that Phillips, the plaintiff in this case, had

no standing to sue under Section 501(b) of the Landrum-Griffin Act, because he was no longer a member of Local 580 of International when he filed the suit. Phillips appealed the District Court decision to this Court. In Osborne's brief in opposition to that appeal there is no intimation that the District Court had decided anything other than that Phillips lacked standing to sue. Osborne's brief said at page 7:

> The court entered a dismissal against appellant on the grounds that he had no standing to bring a suit since he was not a member of the International Local 580 within the meaning of Section 501(b) when this suit was filed (R 28). The court further held on a separate ground that appellant did not file his suit within a reasonable time, since such time period expired upon the conclusion of the disaffiliation meeting on September 26, 1964 (R 27, 28).

■ We have quoted enough of the language of this Court's opinion in Phillips v. Osborne, 403 F.2d 826, to show that this court had no intention, in affirming the judgment of the district court in that case, to decide that no person, in any court could thereafter attack the legality of the disposition which Osborne had made of $40,000 of Local 580's assets. On the contrary, as appears from this Court's language, quoted *supra,* this Court said:

> The appellant has failed to explain why a state court may not satisfactorily determine the ownership of the funds involved in the present controversy.

The appellees would down-grade the significance of that language because it appears in a footnote. We think that the location, whether in the text or in a footnote, of something which the writer of an opinion thinks should be said, is a matter of style which must be left to the writer. A notable example of a footnote of great significance is footnote No. 4 in

the opinion of Mr. Justice Stone (later Chief Justice Stone) in United States v. Carolene Products Co., 304 U.S. 144, 58 S.Ct. 778, 82 L.Ed. 1234 (1938). See, among the many comments which that footnote has excited, that of Judge Learned Hand, "Chief Justice Stone's Concept of the Judicial Function" in "The Spirit of Liberty" (Dillard Ed. 1952) 201, 205.

 We do not stop to analyze the several precedents cited by the appellees to persuade us that the decision of the District Court in the 1964 litigation was more than a decision that the plaintiff in that case lacked standing, under the specifications of the Landrum-Griffin Act, to bring that suit. The party which won that suit in the District Court and on appeal, the District Court, and this Court on appeal gave no indication that more was involved. Now the appellees, in their motion for an injunction, have presented a "sleeper" which, they contend, has foreclosed, not the issues which were litigated in the prior litigation, but the substantive question not adverted to in that litigation. We think it would be remarkable if a party could not test the distinct and separable question of his qualification, or standing, to sue under a statute requiring certain qualifications for standing, without putting in jeopardy the substance of the claim which he is presenting. And when such a remarkable assertion, at best of dubious legal merit, is made for the purpose of inducing a United States District Court to enjoin a State Court of general jurisdiction from proceeding with a case, there is called into play the public policy which is the subject of Justice Black's notable opinion in Younger v. Harris, *supra,* from which opinion we have hereinabove quoted at length. The abrasive nature of such interferences, the lack of comity, the violation of the "live and let live" spirit of federalism and of mutual respect, could do great harm. We are not willing to exert, upon dubious precedents, a nudge in that wrong direction.

The judgment of the District Court is reversed.