**MINI–ART OPERATING COMPANY, Inc., Plaintiff,**

v.

**Norman M. SMITH et al., Defendants.**

**Civ. A. No. T–71–C–43.**

United States District Court,
W. D. Arkansas,
Texarkana Division.

Dec. 22, 1971.

Frierson M. Graves, Jr., of Heiskell, Donelson, Adams, Williams & Wall, Memphis, Tenn., and W. H. Arnold, III, of Arnold & Arnold, Texarkana, Ark., for plaintiff.

W. H. "Dub" Arnold, Pros. Atty., Norman M. Smith, Deputy Pros. Atty., Ted Goldman, Texarkana, Ark., for defendants.

## MEMORANDUM OPINION

PAUL X. WILLIAMS, District Judge.

On August 20, 1971 the plaintiff filed an action T–71–C–31 against elected officials of the State of Arkansas, Miller County, Arkansas, the City of Texarkana, Arkansas and Township Officers in Arkansas seeking, among other things, a preliminary injunction restraining such officers from initiating proceedings to close or otherwise interfere with the operation of the Capri Theatre in the City of Texarkana, Arkansas.

On August 21, 1971, after a hearing as to issuance of a preliminary order, relief was denied and the Court made written findings of fact and conclusions of law.

Thereafter, on August 27, 1971 the plaintiff dismissed the petition without prejudice.

The present action was filed November 22, 1971 and named Norman Smith, the Deputy Prosecuting Attorney, W. H. (Dub) Arnold, the Prosecuting Attorney, L. B. Greer, Sheriff of Miller County, Arkansas, and Paul Jewell, Township Constable, as defendants.

On November 29, 1971 the plaintiff filed Motion for Preliminary Injunction, asking that the defendants and each of them be restrained and enjoined from:

"1. Enforcing Arkansas Statute § 31–101 through § 34–119 against the plaintiff by arresting plaintiff's employees or closing down the operations of the theatre under color authority of said statute.

"2. From seizing any films from the Capri Theatre, Texarkana, Arkansas, or attempting to do so.

"3. From arresting or threatening to arrest any of the plaintiff's employees or its officers because of their exhibitions of adult motion picture films in which nudity is shown at Capri Theatre as being a violation of any of the provisions of § 34–101 through § 34–119 of the Arkansas Code.

"4. From continuing to padlock the Capri Theatre of Texarkana, Arkansas.

"5. From interfering with the business operation of the plaintiff at the Capri Theatre by alleged enforcement of § 34–101 through § 34–119 or any portion thereof or the enforcement of any court order against the plaintiff based on said statute."

Answer and Motion to Dismiss was filed November 30, 1971 by Paul Jewell.

Response to Motion for Preliminary Injunction, Answer and Motion for Summary Judgment with supporting affidavits were filed by the defendants, (Dub) Arnold, Norman Smith and L. B. Greer on December 16, 1971.

On December 22, 1971 a hearing as to preliminary injunction was held in open court and evidence was taken.

The plaintiff is a Missouri corporation which owns and in the past has operated the Capri Theatre in Texarkana, Arkansas, where "adult" motion pictures only were shown and minors were not admitted.

The Circuit Court of Miller County, Arkansas, after a hearing entered an order dated January 14, 1971 concerning the operation of the theatre. A copy of the order as amended by nunc pro tunc order dated January 5, 1972 is as follows:

IN THE CIRCUIT COURT OF MILLER COUNTY ARKANSAS

STATE OF ARKANSAS    PLAINTIFF

v.

CAPRI THEATRE OF TEX-
ARKANA, ARKANSAS THE
MINI-ART    OPERATING
COMPANY, INC., and H. E.
ENLOW           DEFENDANTS

NUNC PRO TUNC ORDER

Comes on for further consideration the Order of this Court dated December 14, 1971, wherein the Court found as follows:

WHEREAS, a verified petition was filed herein by W. H. (Dub) Arnold, Prosecuting Attorney for the Eighth Judicial Circuit of the State of Arkansas, by and through Norman M. Smith, Deputy Prosecuting Attorney for Miller County, Arkansas, seeking to enjoin and restrain the defendants, Capri Theatre of Texarkana, Arkansas, its agents, employees and owners, Mini-Art Operating Company, Inc., together with H. E. Enlow, owner of the premises upon which said theatre is located, from continuing to operate said theatre or allowing same to be operated in a manner which would constitute a public nuisance in violation of the laws of the State of Arkansas, in that the films shown at said theatre depicted nudity and sex scenes and in so showing such films constituted the practice of nudism; and,

WHEREAS, on the 14th day of October, 1971, a temporary restraining order was entered by this Court restraining and enjoining the defendants, Capri Theatre of Texarkana, Arkansas, the Mini-Art Operating Company, Inc., its agents, servants and assigns and H. E. Enlow, owner and lessor of said premises located on part of Lots 9 and 10 in the East Half of Block 3, Ferguson Garden Addition to the City of Texarkana, Arkansas, as well as the holders of any mortgage of record, from conducting any unlawful and prohibited act or acts, or permitting any person to conduct any unlawful acts upon said premises, in particular exhibiting and showing obscene films in violation of the community standards of the State of Arkansas; and the Sheriff of Miller County, Arkansas, was, pursuant to said Order, directed to padlock the premises occupied by the Capri Theatre and further ordering that the matter be set down for hearing on the 22nd day of October, 1971, in compliance with Ark.Stats. 34–104 and the Defendants be notified to appear in this Court upon said date to show cause why said restraining order should not be made permanent; and,

That upon motion of the Defendant, Capri Theatre of Texarkana, Arkansas, and the Mini-Art Operating Company, Inc., by and through their attorney, W. H. Arnold III, a continuance was granted and the aforesaid hearing was re-set for 9:00 o'clock A.M. on November 12, 1971.

Now on this the 12th day of November, 1971, a hearing was held to determine whether or not a permanent injunction should be issued in regard to the property described herein. The State appeared by the Deputy Prosecuting Attorney, Norman M. Smith; the Mini-Art Operating Company, Inc., appeared by Warren St. Clair, its President, and W. H. Arnold III, of Arnold and Arnold, Attorneys at Law; H. E. Enlow, owner and lessor of the described premises did not appear, either in person or by counsel. The Court being well and sufficient-

ly advised as to the law and the evidence finds the following, to-wit:

That the Capri Theatre is located in Miller County, Arkansas upon the following described premises:

A split-wall on part of Lots 9 and 10 in the East Half of Block 3 of Ferguson Garden Addition to the City of Texarkana, Arkansas.

Said premises being owned by H. E. Enlow, and leased to the Mini-Art Operating Company, Inc., a Missouri Corporation authorized to do business in the State of Arkansas, said Corporation being the owner and operator of the Capri Theatre. That said Corporation in its operation of the Capri Theatre has shown movies over the past several months of nude males and females, alleged nudist camps, scenes encouraging, aiding and abetting nudist camps and the promotion of nudism, scenes depicting the preparation of advertisements and prepared material sanctioning, encouraging, fostering, aiding and promoting nudism, nudist camps or colonies; That the conduct of the Respondent, Mini-Art Operating Company, Inc., constitutes a public nuisance as set forth by Arkansas Statute § 34-101.

IT IS THEREFORE, BY THE COURT, CONSIDERED, ORDERED AND ADJUDGED that the Capri Theatre occupies a building located in Miller County, Arkansas, the same being situated upon the following described premises:

A split-wall on part of Lots 9 and 10 in the East Half of Block 3, Ferguson Garden Addition to the City of Texarkana, Arkansas.

That said premises, together with the appliances, fixtures, and furnishing, materials and supplies, including motion picture projecture, screen and sound equipment, located on said premises have been used by the Defendant, Mini-Art Operating Company, Inc., owners and operators of the Capri Theatre, their agents and employees for the purposes of sanctioning, encouraging, fostering, aiding and promoting nudist camps, nudist colonies and glorifying the practice of nudism; and that said conduct constituted a public nuisance.

That H. E. Enlow, owner of the above described premises; the Mini-Art Operating Company, Inc., owners and operators of the Capri Theatre, its agents and employees, are hereby permanently enjoined and restrained from permitting any conduct of activities which encourages, fosters, glorifies, aids, abets or promotes a nudist colony or camp or place for the practice of nudism.

That the Sheriff of Miller County, Arkansas is hereby ordered to remove the padlock placed upon the premises pursuant to the order of this Court on October 14, 1971, and the defendants are hereby allowed to renew the operation of said theatre so long as the operation thereof does not violate the provisions of this order.

All law enforcement officers authorized and empowered to act in the territorial limits of Texarkana, Miller County, Arkansas, and specifically upon the property hereinabove described are ordered and restrained from the confiscation of any material, supplies or equipment without first having made proper application to this Court and receiving permission of this Court to confiscate personal property of the defendants.

DATED THIS 5TH DAY OF JANUARY, 1972.

/s/ John W. Goodson

JOHN W. GOODSON, CIRCUIT JUDGE EIGHTH JUDICIAL CIRCUIT.

It is conceded as a fact that all relief sought in this action is against individuals acting in their capacities as officials of the State of Arkansas.

The present application for a preliminary injunction amounts to an application for the United States District Court to stay proceedings in an Arkansas State Court concerning matters within the jurisdiction of the Arkansas State Court

where there is no express United States statutory authorization for such injunctive relief, where such action is not a necessary aid to the jurisdiction of the United States Court and is not necessary, required or indicated to protect or effectuate a judgment or judgments of the United States Court.

The facts bring this action for a preliminary injunction squarely within the language of 28 U.S.C. § 2283 which is as follows:

"A court of the United States may not grant an injunction to stay proceedings in a State Court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

In the case of Atlantic Coast Line Railroad Company, Petitioner, v. Brotherhood of Locomotive Engineers et al., 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234, Mr. Justice Black used the following language:

"When this Nation was established by the Constitution, each State surrendered only a part of its sovereign power to the national government. But those powers that were not surrendered were retained by the States and unless a State was restrained by 'the supreme Law of the Land' as expressed in the Constitution, laws, or treaties of the United States, it was free to exercise those retained powers as it saw fit. One of the reserved powers was the maintenance of state judicial systems for the decision of legal controversies. Many of the Framers of the Constitution felt that separate federal courts were unnecessary and that the state courts could be entrusted to protect both state and federal rights. Others felt that a complete system of federal courts to take care of federal legal problems should be provided for in the Constitution itself. This dispute resulted in compromise. One 'supreme Court' was created by the Constitution, and Congress was given the power to create other federal courts.

In the first Congress this power was exercised and a system of federal trial and appellate courts with limited jurisdiction was created by the Judiciary Act of 1789, 1 Stat. 73.

"While the lower federal courts were given certain powers in the 1789 Act, they were not given any power to review directly cases from state courts, and they have not been given such powers since that time. Only the Supreme Court was authorized to review on direct appeal the decisions of state courts. Thus from the beginning we have had in this country two essentially separate legal systems. Each system proceeds independently of the other with ultimate review in this Court of the federal questions raised in either system. Understandably this dual court system was bound to lead to conflicts and frictions. Litigants who foresaw the possibility of more favorable treatment in one or the other system would predictably hasten to invoke the powers of whichever court it was believed would present the best chance of success. Obviously this dual system could not function if state and federal courts were free to fight each other for control of a particular case. Thus, in order to make the dual system work and 'to prevent needless friction between state and federal courts,' Oklahoma Packing Co. v. [Oklahoma] Gas [& Electric] Co., 309 U.S. 4, 9 [60 S.Ct. 215, 218, 84 L.Ed. 537] (1940), it was necessary to work out lines of demarcation between the two systems. Some of these limits were spelled out in the 1789 Act. Others have been added by later statutes as well as judicial decisions. The 1793 anti-injunction Act was at least in part a response to these pressures.

"On its face the present Act is an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions. The respondents here have intimated that the Act only establishes a 'principle of

comity,' not a binding rule on the power of the federal courts. The argument implies that in certain circumstances a federal court may enjoin state court proceedings even if that action cannot be justified by any of the three exceptions. We cannot accept any such contention. In 1955 when this Court interpreted this statute, it stated: 'This is not a statute conveying a broad general policy for appropriate *ad hoc* application. Legislative policy is here expressed in a clear-cut prohibition qualified only by specifically defined exceptions.' Amalgamated Clothing Workers v. Richman Bros., 348 U.S. 511, 515–516 [75 S.Ct. 452, 455, 99 L.Ed. 600] (1955). Since that time Congress has not seen fit to amend the statute and we therefore adhere to that position and hold that any injunction against state court proceedings otherwise proper under general equitable principles must be based on one of the specific statutory exceptions to § 2283 if it is to be upheld. Moreover since the statutory prohibition against such injunctions in part rests on the fundamental constitutional independence of the States and their courts, the exceptions should not be enlarged by loose statutory construction. Proceedings in state courts should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately this Court."

In the case of Phillips v. Osborne, 444 F.2d 778 (1971) from the Ninth Circuit, we find the following language:

"In the case of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) Mr. Justice Black, for that court, traced the history of Federal Court injunctions against state judicial proceedings. He reminded that:

"Since the beginning of this Country's history Congress has, subject to few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts. In 1793 an Act unconditionally provided: ' * * * nor shall a writ of injunction be granted to stay proceedings in any court of any state * * *.' 1 Stat. 335, c. 22. A comparison of the 1793 Act with 28 U.S.C. § 2283, its present-day successor, graphically illustrates how few and minor have been the exceptions granted from the flat, prohibitory language of the old Act."

"Justice Black points out that during all the years from 1793 to 1970 Congress has enacted only three exceptions to the original statute.

"The Younger case, supra, and the several companion cases,[1] decided the

1. Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696. Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701. Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688. Byrne v. Karalexis, 401 U.S. 216, 91 S.Ct. 777, 27 L.Ed.2d 792.

same day, all involved injunctions against state criminal prosecutions. But we are unable to think of any reason why the flat 'hands-off' policy enacted in 1793, and the three exceptions enacted since 1793 should be applied more strictly to prevent Federal Court interference with state criminal proceedings than with state civil or other proceedings. Indeed, the difference in treatment would more naturally run in the other direction. The state criminal proceedings in the *Younger* group of cases, involved prosecutions allegedly in violation of Constitutional rights, where the fact of the prosecution itself would have some 'chilling effect' upon the exercise by the defendant, and others of the asserted rights.

"In *Younger*, supra, Justice Black said, 401 U.S. p. 44, 91 S.Ct. p. 750:

"This underlying reason for restraining courts of equity from interfering with criminal prosecutions is reinforced by an *even more vital* (emphasis supplied) consideration,

the notion of 'comity,' that is a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways. * * * It should never be forgotten that this slogan, 'Our Federalism' born in the early struggling days of our Union of States occupies a highly important place in our Nation's history and its future."

The teaching of the above cited cases and the quotations from the language of Justice Black have been consistently followed. A mass of cases in accord are digested under ☞ 508 of title "Courts" in Modern Federal Practice Digest.

In the case of Hilliard v. Pennsylvania Game Commission, 3 Cir., 438 F.2d 92 it is pointed out that the prohibition of § 2283 cannot be evaded by addressing the order to the individual parties rather than directly to the State Courts.

This Court is not unaware of the case of National Labor Relations Board v. Nash-Finch Co., d/b/a Jack & Jill Stores, 404 U.S. 138, 92 S.Ct. 373, 30 L.Ed.2d 328, decided December 8, 1971, where it was held that the National Labor Relations Board could maintain an action to enjoin a State Court proceeding when the subject matter of the suit had been pre-empted; but that is a case completely different from the case at bar. The plaintiff here is not a Federal Agency and the subject matter here has not been pre-empted by Congressional action.

This case is governed by 28 U.S. C. § 2283 and requires a denial of the relief sought.

The Clerk will prepare an Order denying the plaintiffs' request for a preliminary injunction.