Douglas Wayne THOMPSON, Appellant,

v.

STATE of Missouri, Respondent.

No. 10739.

Missouri Court of Appeals,
Springfield District.

Oct. 23, 1978.

Motion for Rehearing or Transfer
Denied Nov. 8, 1978.

Application to Transfer Denied
Dec. 18, 1978.

Gerald H. Johnson, Downs & Johnson, Cape Girardeau, for appellant.

John D. Ashcroft, Atty. Gen., Philip M. Koppe, Asst. Atty. Gen., Jefferson City, for respondent.

Before BILLINGS, C. J., and HOGAN and TITUS, JJ.

HOGAN, Judge.

This is a proceeding for postconviction relief under our Rule 27.26, V.A.M.R. Petitioner Douglas W. Thompson seeks to vacate a life sentence imposed by the Circuit Court of Mississippi County on December 23, 1966, after a jury had found him guilty of first-degree murder. The trial court denied an evidentiary hearing and dismissed the proceeding upon the State's motion. Thompson appeals.

Thompson was convicted of first-degree murder in the Circuit Court of Bollinger County in December 1961, and a death sentence was imposed. On direct appeal, the judgment and sentence were affirmed. *State v. Thompson*, 363 S.W.2d 711 (Mo. banc 1963). In January 1964, petitioner filed a motion to vacate the sentence pursuant to Rule 27.26. The trial court denied the motion without a hearing. An evidentiary hearing was ordered and was held. The trial court denied relief. On appeal our Supreme Court reversed, vacating the sentence and judgment on the grounds that the State had suppressed material evidence and had compounded the error with a misleading closing argument. Upon retrial in 1966 in the Circuit Court of Mississippi County, petitioner was again found guilty; his punishment was assessed at life imprisonment.

The proceeding now before this court was begun on September 10, 1975, nearly nine years after Thompson was sentenced for the second time. The original petition was apparently drawn pro se. Much of the matter alleged is simple diatribe and invective, and might well have been stricken as scurrilous by the trial court. The allegations of the petition are: (1) that petitioner's conviction was obtained by the "deliberate" use of false and perjured testimony; (2) that petitioner's conviction violates the constitutional prohibition against "double jeopardy"; (3) that petitioner was deprived of his right to trial by a jury composed of a true cross-section of the community, and was thus denied ". . . an impartial trial, due process and equal protection of the law in violation of the Sixth and Fourteenth Amendments . . ."; (4) that the jury was not instructed upon the law of the case, in violation of the "due process clause of the Fourteenth Amendment to the United States Constitution," petitioner further alleging that the instructions shifted the burden of proof to the defendant; and (5) that the trial court denied petitioner equal protection of the laws by refusing to furnish him a copy of the instructions given at the trial.

Counsel was appointed for the petitioner, and this proceeding lay dormant for some time. Thompson then filed a petition for a writ of habeas corpus in the Supreme Court of Missouri; the petition was denied without prejudice and another such petition was filed March 1, 1977, in the Circuit Court of Mississippi County. The second petition for the writ alleges some of the matter averred in the petition to vacate, and further avers that the hearing on the present motion under Rule 27.26 has been deliberately delayed. The petitioner also requested and was granted leave to amend his petition to vacate so as to include the allegation that the "keyman" system of jury selection was used in Mississippi County when he was tried, thus denying him due process.

On June 14, 1977, counsel for the State and appointed counsel for the petitioner appeared in the Circuit Court of Mississippi County, principally to argue the State's motion to dismiss the petition. The State moved and was granted leave to file: (1) the trial transcript prepared after the peti-

tioner's original trial, and (2) an excerpt from the proceedings had upon petitioner's second trial. The State then argued that the petition was insufficient as a pleading. Petitioner's counsel responded by saying he had a letter from the petitioner, stating that petitioner had recently obtained a photograph which proved the State's witnesses had perjured themselves upon the second trial. Attention was called to several other aspects of the petitioner's motion to vacate. The general thrust of the argument made by petitioner's counsel was that an evidentiary hearing should be had. At the close of the arguments, the trial court took the case under advisement. Counsel for both parties were told "[W]hatever you desire to submit you submit." Apparently, nothing further was forthcoming and on June 22, the trial court entered findings, denied an evidentiary hearing, and dismissed the petition or motion for postconviction relief upon the State's motion. This appeal followed.

The State and the petitioner have, for the most part, briefed the appeal in procedural terms. There is no doubt that a proceeding under Rule 27.26 is a *civil* proceeding; Rule 27.26(a) in terms so provides. The general rules of good pleading apply to a motion or petition for postconviction relief under Rule 27.26, and an application for relief may be held insufficient if the averments consist of abstract conclusions only, leaving both the trial and appellate courts to speculate what the petitioner's real contentions are. *Smith v. State*, 513 S.W.2d 407, 410–411[1] (Mo. banc 1974), cert. denied 420 U.S. 911, 95 S.Ct. 832, 42 L.Ed.2d 841 (1975); *Hogshooter v. State*, 514 S.W.2d 109, 113 (Mo.App.1974). The petition in this case is couched in such conclusory, argumentative and epithetical language that the appeal might be disposed of on the ground that petitioner's motion is insufficient as a pleading, but we prefer to consider it upon its merits, at least to the extent we can ascertain what the nature of the petitioner's assertions are.

To begin with, notice must be taken of petitioner's conduct when he was sentenced in 1966. A partial transcript of the record shows that the petitioner appeared in person and with counsel before the trial court for sentencing on December 23, 1966. The following proceedings were had: (our emphasis)

"THE COURT: . . . By reason of the responsibility that is placed on me in this position where the jury has found you guilty of murder in the first degree, it becomes my duty, as I said, to fix the punishment, and that punishment will be fixed at a life term in the penitentiary. You may have a seat and I will consult with your lawyers.

\* \* \* \* \* \*

THE COURT: Now, Mr. Thompson, you and your attorney in the presence of the court now, the statute provides, of course, that a motion for a new trial may be filed, and if you desire, the Court will give you a definite number of days to file that motion for new trial. We will give you such time as you want. Do you at this time feel that you would like to have additional time to file a motion for a new trial?

MR. HERD: Your Honor, speaking in behalf of the defendant, we don't want any time for a motion for a new trial.

THE COURT: Is that your understanding, Mr. Thompson?

THE DEFENDANT: Yes, sir.

THE COURT: Your lawyer has indicated that you do not desire to file a motion for new trial or for additional time or time within which to file a motion for new trial. You understand that if we have what we call allocution and sentence then under the strict rules of the Court and of the law you would not then be permitted to file a motion for new trial. Strictly within our rules a motion for new trial cannot be filed after we have such an allocution.

*MR. HERD: If the Court please, I think the record should indicate that I have discussed this matter with the defendant and that the defendant is aware of his rights in this area, and I have made that quite clear in this area, and I am sure he understands that, is that correct?*

THE DEFENDANT: Yes.

THE COURT: You understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Since the jury has returned a verdict and the court has indicated the punishment, has anyone in any ways mistreated you in any way?

THE DEFENDANT: No, sir.

THE COURT: Threatened you in any way?

THE DEFENDANT: No, sir.

THE COURT: Made you any promises?

THE DEFENDANT: No, sir.

THE COURT: No one has made you any promise that would lead you to desire to waive your right or to deny your right to file a motion for new trial?

THE DEFENDANT: No, sir.

THE COURT: You fully understand your rights?

THE DEFENDANT: Yes, sir.

THE COURT: And you have discussed them with your lawyer?

THE DEFENDANT: Yes, sir.

THE COURT: Your desire is that you do not file a motion for new trial?

THE DEFENDANT: Yes, sir.

THE COURT: Your desire is that you do not file a motion for new trial?

THE DEFENDANT: That is right, Your Honor.

THE COURT: Then you may stand. Now, having had the verdict of the jury, having had the Court indicate the punishment as being a sentence to a penal institution in Missouri, that is, the custody of the Department of Corrections for your natural life, do you now have anything to say or any lawful or legal reason to give why sentence should not be pronounced?

THE DEFENDANT: No, sir.

MR. HERD: There is no reason, Your Honor.

THE COURT: All right. The defendant having been asked if he had any lawful or legal reason to give why sentence should not be pronounced, and having given none, and in accordance with the findings of the verdict of the jury, and the indication of the Court, you are hereby sentenced to the penitentiary for your natural life and ordered committed to the custody of the Department of Corrections for your natural life. All right. You may be seated. Now there will be the further order that the defendant be forthwith placed in the custody of the warden of the penitentiary for safekeeping under his prior sentence and for the carrying out of the sentence of this court . . . ."

Three of the petitioner's grounds for relief are directed to instructional error. As nearly as we can make out, Thompson argues that he was deprived of "due process" because the jury was not instructed on all degrees of homicide, specifically murder in the second degree and manslaughter, and because one of the instructions given (it is not set out) shifted the burden of proof to the defendant. In this connection, petitioner excuses his failure to set out the instruction complained of by averring that the trial court refused to furnish him a copy of the instruction although he requested it. The obvious inquiry is whether the petitioner's conduct and that of his counsel at the time of sentencing amounted to a deliberate bypass of petitioner's right to appeal so as to preclude the petitioner from complaining of instructional error, including his claim that the charge to the jury did not comport with the due process requirement established in *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

The doctrine that a deliberate bypass, whether for strategic, tactical or other reasons, of orderly state procedure may preclude a petitioner seeking postconviction relief from raising federal claims was recognized and applied by our Supreme Court in *Nickens v. State,* 506 S.W.2d 381, 386–387[1, 2][3, 4] (Mo.1974), and was subsequently discussed in scholarly detail by our colleagues at Saint Louis in *McCrary v. State,* 529 S.W.2d 467, 472–474[7][8] and nn. 6, 7 and 8 (Mo.App.1975).[1] We are convinced

---

1. We understand that one member of the court which decided *McCrary,* supra, has become dissatisfied with the opinion. *Turley v. State,* 571 S.W.2d 465 (Mo.App.1978) mandate issued Oc-

there was a deliberate bypass of petitioner's right of appeal after his conviction in 1966, and consequently, he may not now raise claims of error which might have been raised then. Except for such matters as may be considered "plain error," timely filing of a motion for new trial is an indispensable prerequisite to securing orderly review of a judgment of conviction in a criminal case tried to a jury. In other words, petitioner's waiver of his right to file a motion for new trial amounted to a waiver of his right of appeal. Such is the law now, *State v. Cluck,* 451 S.W.2d 103, 104[1] (Mo. 1970); *State v. Rapp,* 412 S.W.2d 120, 122[2] (Mo.1967), and such was the law in 1966 when the petitioner was convicted. *State v. Sykes,* 400 S.W.2d 57, 59[1] (Mo.1966), and see *State v. Phason,* 406 S.W.2d 671, 673[1] (Mo.1966). The trial court's error, if any, in failing to instruct the jury upon lesser degrees of homicide was consequently waived when the petitioner waived his right to move a new trial upon that ground. *State v. Gooch,* 420 S.W.2d 283, 287[9] (Mo.1967).

We are aware that the deliberate bypass doctrine, as set out in *Fay v. Noia,* supra, 372 U.S. at 439, 83 S.Ct. at 849, 9 L.Ed.2d at 869–870 and n. 1, equated the term "deliberate bypass" with the conventional definition of "waiver," specifically, the intentional relinquishment or abandonment of a known right or privilege. When Thompson appeared for sentencing on December 23, 1966, he had been once convicted of first-degree murder and had received a death sentence, which had been affirmed on direct appeal. He had applied for and obtained postconviction relief; upon retrial he had been convicted and had received a life sentence. *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), which suggested that the death penalty might be violative of the Eighth Amendment, had not yet been decided. So, as in *Nickens v. State,* supra, 506 S.W.2d 381, the death penalty was still a possibility, discretion the better part of valor, and the petitioner's motivation in deciding to forego an appeal on the merits is obvious. This is not to say the record is silent as to the defendant's exercise of volition; at the time of sentencing, petitioner's counsel, who represented petitioner upon the first trial and in the postconviction proceeding and at the second trial, asked that the record show petitioner had been advised of his rights, stated that he had made petitioner's rights "quite clear" and was "sure" petitioner understood his rights. The petitioner testified he was not threatened or promised anything which led him to waive his right of appeal. Further, although we may not attribute professional expertise to the petitioner because he had been tried before, still his knowledge-ability based on prior convictions is a factor tending to indicate a voluntary, knowing bypass of his right of appeal.[2] The bypass was clearly knowledgeable and voluntary.

Such conclusion disposes of petitioner's assertion that the trial court erred in failing to instruct the jury on lesser degrees of homicide. The question remains whether it disposes of his claim that one of the instructions shifted the burden of proof to him in violation of the due process requirements enunciated in *Winship,* supra, which was decided after petitioner's conviction. It cannot logically be said, usually, that an applicant for postconviction relief who has waived his right of appeal is precluded from

---

tober 12, 1978. With deference, we believe the vehemence of the dissent is unjustified. Our Rule 27.26 was fashioned to meet the requirements of the "triology," including *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), see *State v. Stidham,* 415 S.W.2d 297, 298[2][3] (Mo. banc 1967), and it can scarcely be denied there is *some* degree of analogy between federal postconviction proceedings under 28 U.S.C. § 2255 and proceedings under our Rule 27.26. The views expressed in *McCrary,* supra, and in the concurring opinion in *Turley,* supra, accord with reality; the bypass doctrine enunciated in *Fay* has been selectively applied, depending on the magnitude of the alleged constitutional error as perceived by the particular court. See *Wainwright v. Sykes,* 433 U.S. 72, 94–95 and n. 1, 97 S.Ct. 2497, 2510 and n. 1, 53 L.Ed.2d 594, 613 and n. 1 (Stevens, J., concurring) (1977).

**2.** See Developments in the Law—Federal Habeas Corpus, 83 Harv.L.Rev. 1038, 1107 (1970).

asserting federal rights established thereafter, if those rights have been made retroactive. *United States v. Wilkins,* 367 F.2d 990, 993[5, 6][8] (2d Cir. 1966); *Nadeau v. State,* 232 A.2d 82, 84–85 (Me.1967); *Commonwealth v. Richardson,* 433 Pa. 195, 249 A.2d 307, 311[5] (1969) (dealing with preclusion arising from procedural default). Petitioner's due process point, as stated, is that "[his] conviction obtained herein is violative of the due process clause of the Fourteenth Amendment to the United States Constitution for the . . . reason that Missouri case law in operation at the time of [the 1966] conviction allowed the State to presume malice aforethought, and placed a burden of proof upon a defendant to prove certain reductive factors (sudden provocation, heat of passion or that the crime was not committed with deliberation) before the jury was instructed on lesser included offenses, i. e., 2d degree murder, or manslaughter . . ." This "ground" for relief is explained by petitioner's complaint about the trial court's instructions and the trial court's failure to furnish the petitioner with a copy of the whole charge to the jury.

This court is generally familiar with the line of authority, beginning with *In re Winship,* supra, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), which holds that a criminal defendant has a due process right to require the prosecution to prove every fact necessary to constitute the crime charged beyond a reasonable doubt. Expanding this principle to some extent, the Supreme Court of the United States considered a single instruction in *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), and the general charge to the jury in *Hankerson v. North Carolina,* 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977). In *Mullaney,* the court held that an instruction requiring a criminal defendant in a murder prosecution to prove that he acted in the heat of passion or upon sudden provocation by a preponderance in order to reduce the homicide to manslaughter violated the due process standard set out in *Winship,* supra. Perhaps *Mullaney* and *Hankerson* can be interpreted as suggesting that any instruction to the jury which shifts the burden of proof to the defendant violates due process, but both *Mullaney* and *Hankerson* are in terms so hedged about and limited by the court that the scope and impact of the two decisions remains problematic.[3]

The point of this abstract discussion, which is probably imprudent, is this: the petitioner now complains of instructional error which might have been corrected on appeal. The petitioner committed the offense of which he was convicted in a crowd of witnesses; *if* in 1966, the jury was instructed that it was entitled to presume malice, or that petitioner had the burden to prove circumstances of mitigation or justification, reversible error was committed which could have been redressed on appeal. *State v. Martin,* 364 Mo. 258, 272, 260 S.W.2d 536, 546[11] (banc 1953); *State v. Cook,* 262 S.W.2d 866 (Mo.1953); *State v. Strawther,* 342 Mo. 618, 627, 116 S.W.2d 133, 138–139[8, 9] (1938).[4] Indeed, in 1965

---

**3.** The concurring opinion in *Mullaney,* supra, 421 U.S. at 704–706, 95 S.Ct. at 1892–1893, 44 L.Ed.2d at 522–524, suggests that a single instruction can rarely be the basis for condemning the whole charge as a denial of due process on the ground that it shifts the burden of proof, and implies marginally that instructional error shifting the burden of proof is subject to waiver by failure to make timely objection. In *Hankerson,* supra, the court directly held that the only question being decided was whether the Supreme Court of North Carolina erred in not holding *Mullaney,* supra, to be retroactive.

**4.** While it is not necessary to our ruling, we have the view that the presumption of malice arising out of a killing by the use of a deadly weapon upon a vital part of the body, of which

defendant specifically complains, does not shift the burden of proof in an unconstitutional manner. As noted above, the giving of an instruction upon that presumption was long ago held to be reversibly erroneous where there were eyewitnesses to the crime, *State v. Martin,* supra, 364 Mo. at 272, 260 S.W.2d at 546[11] (banc 1953), but even when the instruction was properly given, the presumption was avoided by a showing of "some evidence" of circumstances of mitigation or justification. *State v. Strawther,* supra, 342 Mo. at 627, 116 S.W.2d at 138–139[8, 9]; *State v. Malone,* 327 Mo. 1217, 1228, 39 S.W.2d 786, 790[6] (1931). Such a requirement did *not* shift the burden of proof in an unconstitutional manner. *Mullaney v. Wilbur,* supra, 421 U.S. at 701, n. 28, 95 S.Ct. at 1891, n. 28, 44 L.Ed.2d at 521, n. 28. In this

our Supreme Court condemned all instructions in criminal cases which permitted the jury to believe that a criminal defendant had any burden to prove his innocence. *State v. Reeder,* 395 S.W.2d 209, 210–211[1][2][4] (Mo.1965). Therefore, if the petitioner was aggrieved by an instruction shifting the burden of proof to him on any element of the crime, he had a remedy by appeal under the substantive law of Missouri without resort to federal constitutional doctrine. It follows that petitioner's deliberate bypass of his right of appeal in 1966 precludes his assertion of instructional error on the ground that the State's instructions (or perhaps a single instruction) shifted the burden of proof. Such ruling also disposes of petitioner's complaint that the trial court should have furnished him "a copy of the instructions."

Thompson's vigorous assertion that his conviction was obtained by the use of false and perjured testimony has been addressed before. As noted, the petitioner sought and obtained postconviction relief from his first conviction. *State v. Thompson,* 396 S.W.2d 697 (Mo. banc 1965). In the first postconviction proceeding, Thompson advanced the argument that he had been convicted upon false and perjured testimony. Addressing this contention very carefully with a view to adjudicating it finally, our Supreme Court set forth the allegedly false testimony in laborious detail; the court rejected the argument that the evidence objected to was so obviously false and at variance with known physical facts as to amount to perjury. *State v. Thompson,* supra, 396 S.W.2d at 703–704[7][8]. The petitioner advances the identical argument here. In his petition, he recites the evidence heard upon his trial in 1966—or his recollection of it—in great detail, arguing that the evidence indicating he shot his victim is so contrary to established physical facts [and] matters of common knowledge that it cannot be accepted as substantial evidence; therefore, he was convicted by perjury. In support of this contention, Thompson claims that a

photograph of his victim, only recently discovered, conclusively establishes that his victim could not have been killed in the manner indicated by the State's evidence at his trial in 1966. Petitioner has included a diagram of the scene of the killing as the photograph would show it to be, and has attached the diagram to his petition as an exhibit. The difficulty with the diagram is that when it is examined in connection with the evidence already twice recited in our appellate reports, it quickly appears that petitioner's "newly discovered" evidence establishes nothing new. It merely illustrates graphically the inconsistencies already noted by our Supreme Court in 1965. See *State v. Thompson,* supra, 396 S.W.2d at 703–704[8].

■■■■ We are aware that no evidentiary hearing has been had on this point, and no transcript of petitioner's second trial was ever prepared because the petitioner waived his right of appeal. We further bear in mind that a substantial change in the material facts may bar the preclusive effect of a prior appellate adjudication in civil cases. *Schell v. City of Jefferson,* 361 Mo. 495, 235 S.W.2d 351, 355[2] (banc 1951); *State ex rel. Bush v. Sturgis,* 281 Mo. 598, 607–608, 221 S.W. 91, 95[6], 9 A.L.R. 1315, 1321 (1920), and see generally A. Vestal, Res Judicata/Preclusion 414 (1969). Nevertheless in this case, petitioner himself has averred, on oath, facts which taken as true demonstrate the factual identity of the point advanced in 1965 and the claim of error made here. There is, therefore, no necessity for an evidentiary hearing to avoid "presuming from a silent record." We are aware further that res judicata, collateral estoppel and like doctrines of preclusion by prior adjudication do not apply with full force in postconviction proceedings. *Wilwording v. Swenson,* 502 F.2d 844, 848–849[5][6, 7] (8th Cir. 1974); see A. Vestal, supra, at 270. Even so, a prior adjudication in a postconviction proceeding may be preclusive, even by the most exacting standards, if: (1) the

connection, it should be noted that despite the local view that footnotes in an opinion are anathema, they are significant and operative

parts of a federal opinion. *Phillips v. Osborne,* 444 F.2d 778, 782–783[1] (9th Cir. 1971).

same ground presented in the subsequent application was determined adversely to the petitioner on the prior application; (2) the prior determination was on the merits; and (3) the ends of justice do not manifestly require a second hearing. *Sanders v. United States,* 373 U.S. 1, 15, 83 S.Ct. 1068, 1077, 10 L.Ed.2d 148, 161 (1963); *Wilwording v. Swenson,* supra, 502 F.2d at 848–849.[5]

■ In this instance, the very claim of infringement of a federally protected right has been once heard and determined adversely to the petitioner after a full evidentiary hearing. Such appeal to the "ends of justice" as petitioner's claim of error may have is greatly diminished when it is shorn of its "constitutional" embellishment. In reality, the petitioner's point is only an abrasive reargument of his prior claim— that the State's evidence against him was "inherently impossible." It is doubtful that the "inherently impossible" rule applies in criminal cases. *State v. Chamineak,* 328 S.W.2d 10, 13–14 (Mo.1959). If it does, then the petitioner's argument concerns the *sufficiency* of the evidence, a matter not cognizable under Rule 27.26. *McCrary v. State,* supra, 529 S.W.2d at 471[6].

■ The petitioner further claims that his second conviction violated the double jeopardy clause of the Fifth Amendment, which is applicable to state proceedings through the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); *Kansas City v. Bott,* 509 S.W.2d 42, 44 (Mo. banc 1974). This claim is wholly without merit. Petitioner's first conviction was set aside because of trial error, specifically, prosecutorial misconduct in the suppression of and failure to disclose exculpatory evidence. *State v. Thompson,* supra, 396 S.W.2d at 700. Retrial to correct such a trial error does not constitute double jeopardy, and the fact that the conviction was set aside on a collateral attack under Rule 27.26 is immaterial. *Burks v. United States,* 437 U.S. 1, 15, 98 S.Ct. 2141, 2149, 57 L.Ed.2d 1, 11–12 (1978);

*United States v. Tateo,* 377 U.S. 463, 465–466, 84 S.Ct. 1587, 1588–1589, 12 L.Ed.2d 448, 450–451 (1964).

We conclude that as to all the grounds for relief which we have considered, the trial court did not err in denying an evidentiary hearing.

The final claim of error briefed here is that petitioner ". . . was deprived of a jury composed of a true cross-section of the community, and was thus deprived of an impartial trial, due process and equal protection of the law in violation of the Sixth and Fourteenth Amendments to the United States Constitution in that there exists a systematic discrimination in the practices employed in Mississippi County, Missouri, that causes a substantial disparity between representation of cognizable groups in the jury pool and the groups [sic] representation in the entire population."

■ It is readily apparent that in framing this ground for relief, the petitioner has thoroughly confused several discrete federal claims. *State v. Carter,* 572 S.W.2d 430 (Mo. banc 1978). We have the view that challenges to the composition of the petit jury array are subject to the rule of preclusion by failure to object timely, at least where the information indicating discriminatory selection was available, as a practical matter, at the time of trial. *Arnold v. Wainwright,* 516 F.2d 964, 970–971[4–6][7] (5th Cir. 1975), reh. and reh. en banc denied (1975).

■ Nevertheless, we have no record before us, and no method of determining what, if any objection, was presented at the time of trial. We conclude the cause should be remanded for an evidentiary hearing upon the question of constitutionally impermissible discrimination in the jury selection process. The cause is remanded for an evidentiary hearing upon that issue only. It is so ordered.

TITUS, J., concurs.

BILLINGS, C. J., dissents.

5. We have no occasion to consider the language or construction of Rule 27.26(d) on this appeal. This is not a second or successive motion for relief in the same case; here the petitioner has been retried because of trial error nullifying the first conviction.

**550**

BILLINGS, Chief Judge, dissenting.

I am in agreement with the principal opinion's holdings except as to the ruling concerning appellant's complaint regarding the jury selection process. I would hold, for reasons which follow, appellant is not entitled to an evidentiary hearing on that issue.

First of all, appellant's motion on this ground is conclusionary and fails to plead facts in support thereof. This dereliction is, in itself, sufficient to support the trial court's denial of a hearing on this issue.

Secondly, and of equal import, is the fact that Missouri has long followed the rule that a challenge to a jury array or panel must be timely presented or it is waived. *State v. Turnbough,* 498 S.W.2d 567 (Mo. 1973). The trial court's order denying appellant relief expressly found that the record in his 1966 trial showed appellant was not entitled to relief and therefore not entitled to an evidentiary hearing. Inherent in that finding is a determination that a timely challenge to the array or panel was not made by the appellant.

It is true that in *Ross v. Wyrick,* 581 F.2d 172 (8th Cir. 1978), a three-judge panel of the federal judiciary ruled, contrary to our ruling in *State v. Ross,* 530 S.W.2d 457 (Mo.App.1975), that a prima facie case of jury discrimination was demonstrated in Mississippi County, Missouri, but an examination of that opinion will disclose that the pivotal peg which the court hung its decision on was possible racial discrimination in the makeup of the jury panel in the trial of a Negro. Furthermore, in *Ross,* a timely motion to strike the jury panel was made.

*Arnold v. Wainwright,* cited in the principal opinion, squarely recognizes that in applying federal standards on federal habeas corpus, the failure to comply with state procedural law constitutes a waiver of the right to challenge the petit jury composition. The court applied the failure-to-object standard and held Florida's procedural rule requiring a timely challenge to a jury panel precluded habeas relief.

I would affirm the judgment of the trial court.