**STATE of Missouri, Respondent,**

v.

**Junior Boyd RAPP, Appellant.**

**No. 51937.**

Supreme Court of Missouri,
Division No. 2.

Feb. 13, 1967.

Rehearing Denied March 13, 1967.

**122**

Charles M. Cook, Carthage, for appellant.

Norman H. Anderson, Atty. Gen., Jefferson City, James J. Sauter, Special Asst. Atty. Gen., St. Louis, for respondent.

EAGER, Presiding Judge.

The defendant was convicted by a jury of uttering a forged check and, upon a finding of three prior felony convictions, he was sentenced by the court to serve a term of ten years, with an allowance of 251 days of jail time. The original notice of appeal was filed late, but this court granted leave under Rule 28.07 to file a delayed notice of appeal. The trial court permitted defendant to appeal as a poor person and furnished him a free transcript. Defendant was represented at the trial by appointed counsel who was thereafter permitted to withdraw; other counsel was appointed to prosecute this appeal and the case has been briefed here.

We are met at the outset by a motion of the State asking that we confine our consideration to the record proper because the motion for a new trial was filed four days late. We would be required to consider that question even in the absence of such a motion. The record shows that the verdict was returned on September 27, 1965, and the motion was filed on October 11; we have inquired independently of the Circuit Clerk and find that no order was made granting an extension of time under Rule 27.20. We shall therefore consider only the matters of record, and one additional point which, considered broadly, involves a constitutional issue. Counsel for defendant says that inasmuch as the prosecuting attorney and the court "acquiesced" in the filing and consideration of the motion, its late filing was "cured," if indeed such action did not constitute a nunc pro tunc order. For the requirements on such an order see the case of State v. Hooper, Mo., 364 S.W.2d 542. It is obvious that there was no such order, nor could there have been one upon the present record; and neither the parties nor the court can waive the requirements of Rule 27.20.

Some points of defendant's brief are wholly insufficient in any event under our Rule 83.05, because they do not show "wherein and why" the actions of the trial court are claimed to be erroneous. The points dealing with the admission of evidence, instructions, insufficiency of the evidence of prior convictions, alleged lack of proof of the corporate capacity of the First National Bank of Joplin, the overruling of challenges for cause to two veniremen, and the endorsement of the names of additional witnesses at the beginning of the trial, are all matters which require assignments of error in a motion for a new trial.

We consider first the information. It first alleges several prior felony convictions and imprisonment therefor; thereafter, in Count 1 it charges the making and forging on March 6, 1965, of a check for the payment of money purporting to be the act of Mrs. O. E. Kingsborough. We need not consider that count further, for defendant was acquitted on that charge, the court having instructed that he could be found guilty of forging or of passing the check, but not on both charges. The second count

of the information was, in substance, that defendant " * * * feloniously did pass, utter and publish as true to Elmer Coy, d/b/a Elmer's Bar, 903 Main, Joplin, with the intent then and there and thereby to injure and defraud," a certain check, "forged and counterfeit," purported to be made by Mrs. O. E. Kingsborough payable to defendant, and purporting to be drawn on the "First National Bank of Joplin, Missouri, a national banking association duly organized and existing under the laws of the State of Missouri," and that defendant *then and there well knew that the said* check was "false, forged and counterfeit." A copy of the face of the check was included in the information, with a notation of defendant's endorsement as it appeared on the back.

Counsel says here that a correct description of the "banking institution" on which the check was drawn was an essential element of the information. He seems to argue that this is necessary to distinguish the check from some other form of instrument, and to establish it as a check on a known bank which the acceptor would presume to be good. He cites no authority. Respondent calls our attention to the forgery statute enacted in 1955, Section 561.011, RSMo 1959, V.A.M.S., which is, in its pertinent parts, as follows: "1. It shall be unlawful:

"(1) For any person with the intent to defraud to make or alter any writing of any kind having legal efficacy or commonly relied upon in business or commercial transactions, so that it purports to have been made by another, or at another time, or with different terms, or by authority of one who did not give such authority, or for any person with intent to defraud to totally erase, obliterate or destroy any such instrument;

*    *    *    *    *    *

"(3) For any person with intent to defraud to use as true, or to utter as true, or to possess with intent to utter as true or false, or to transfer with intent that it

shall be uttered as true, any writing or other thing which said person knows has been made or altered in the manner described in either of subdivisions (1) or (2);"

■ This statute, in effect, describes the subject of a forgery as a "writing of any kind having legal efficacy or commonly relied upon in business or commercial transactions." And the crime thus defined as uttering, is the using or uttering as true of any such instrument which the person knows has been so made or altered. There *is no reference in this statute to the corpo-* rate character of a drawee bank, as there was in prior statutes. Sections 561.080 and 561.090, RSMo 1949. Count 2 of this information included a verbatim copy of the face of the check which showed that it was drawn on "First National Bank of Joplin, Mo."; the check thus alleged was a writing "commonly relied upon in business or commercial transactions." Checks ordinarily do not carry a recitation of the mode of corporate organization of the bank on which they are drawn. The wording of this information is inept in that it describes the Bank as a "national banking association" and also as one "duly organized and existing under the laws of the State of Missouri," but under the existing statute both references may and should be considered as surplusage. Particularly is this true after verdict. State v. Biven, Mo., 151 S.W.2d 1114, and cases there cited. No essential averment of the crime of uttering a forged check was omitted in this information, and the defendant certainly could not have been misled.

■ A written statement or confession of the defendant was received in evidence. Counsel contends, in a rather vague manner, that this was inadmissible in that defendant's "constitutional rights" were not safeguarded and that he was without counsel at the time. The objection at the trial was equally as vague, on this phase. We rule here on the contention under Rule 27.20(c) the so-called "plain error" rule because a constitutional contention may be raised on

habeas corpus or in a motion to vacate a judgment and conviction under either state or federal procedure. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837; Moore v. Dempsey, 261 U.S. 86, 43 S.Ct. 265, 67 L.Ed. 543. Thus, if it were true that the admission of the confession was in violation of the Fifth or Fourteenth Amendments, or both, its use would be plain error affecting substantial rights, from which manifest injustice might be found to result. We so held in State v. Beasley, Mo., 404 S.W.2d 689.

Captain Jack Flenner, Chief of Detectives in Joplin, testified: that when he came to work at about 8:00 o'clock on the morning of April 9, 1965, he questioned defendant in his office about the check in question; that before doing so he told defendant what he wished to discuss, that he could talk to an attorney before giving any statement, that whatever he said would be used against him in court; that he gave him an opportunity to procure an attorney or to use the telephone in order to have someone help him secure counsel; that no threats or promises whatever were made to the defendant; that defendant said that he would give a statement; that, so far as he recalled, no one else was then present, although Mrs. Armstrong, a secretary, was called in a little later and that the statement was taken down by her in shorthand; that the statement was actually taken in shorthand in approximately seven minutes, after the prior conversations; that when it was transcribed the defendant read it, stated that it was correct, and signed it. On cross-examination the witness testified that the wording at the beginning of the statement was "what we use" after having talked with the person to be interrogated; that some of the wording was that of the witness and some was that of the defendant; that he had told defendant at the outset about his right to a lawyer; that he did not know what sleep or food defendant had previously had, but that the occupants of the jail were fed before that time in the morning. The statement was as follows: "'Joplin, Missouri, April 9, 1965, 8:37 a. m. to 8:44 a. m., Detective's office, Joplin Police Department, State of Missouri, County of Jasper. I, Junior Boyd Rapp, make the following voluntary statement to W. H. Flenner who I know to be Captain of the Joplin, Missouri, police department. I have been told that I do not have to make a statement, and any statement I may make could be used against me in a court of law. I have been told that I have the right to talk with a lawyer of my choice or with anyone else before making a statement and before saying anything at all, no threats or promises have been made to induce me to make this statement.

"'I am 33 years old. Was born in Marionville, Missouri on April 11, 1931. I live in Webb City, Missouri. On March 6, 1965 I had a blank counter check in my possession, and I made out a check for Ten dollars drawn on the First National Bank of Joplin, payable to Junior Boyd Rapp, and signed by Mrs. E. O. Kingsborough, 2801 East 15th.

"'I took this check to Elmer's Place, 903 Main and cashed it. I had worked for Mrs. Kingsborough before. I knew at the time I was writing the check I was forging her signature. I have identified this check by initial and dated it April 9, 1965.

"'I have read the above statement and initialed each page, and it is true and correct.'" This statement was signed by the defendant but it was not sworn to.

There was no contention at the trial that the confession was involuntary, and there is really none here. Counsel says that Captain Flenner's testimony "does not convince an impartial court" that defendant's rights were safeguarded, or that the statement was in fact the statement of the defendant. No request was made at any time for a hearing on such matter outside the presence of the jury, nor did defendant testify at any time, either on this subject or the merits. The objection that the statement was not properly identified because the stenographer did not testify is wholly

without merit. The argument that some of the statements were those of the defendant and some were those of the interrogator becomes meaningless when we note that after the statement was typed, the defendant read it, considered it, said that it was correct, and signed it. In this case there is nothing but speculation, pure and simple, to impeach the statement.

■ In Johnson et al. v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882, June 20, 1966, it was held that the requirements of Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, June 13, 1966, were not applicable to cases tried before its date, and they are therefore not applicable here. As a matter of fact, it would seem that defendant was advised, in substance, of all his rights as required by Miranda except the right to have counsel appointed if he so desired. According to Johnson, supra, the defendant here had the right to "invoke a substantive test of voluntariness * *." He has always had that right in Missouri. State v. Bradford, Mo., 262 S.W.2d 584; State v. Statler, Mo., 331 S.W.2d 526; State v. Williams, Mo., 369 S.W.2d 408. Here he did not invoke that right, and on the "sum total of the circumstances," Crooker v. State of California, 357 U.S. 433, 78 S.Ct. 1287, 2 L.Ed.2d 1448, there was and is no evidence that the statement was made involuntarily. It was properly admitted in evidence.

■ Counsel suggests that the punishment imposed was excessive. The sentence is, of course, a part of the record. The court here had found three prior felony convictions; this also appears in the formal record. The term of ten years was the maximum permitted for this offense, § 561.011, subd. 2, but the appellate courts will not ordinarily interfere with the exercise of the trial court's discretion in this regard where the sentence is within the limits permitted by the statute. State v. Burchett, Mo., 302 S.W.2d 9; State v. Brewer, Mo., 338 S.W.2d 863; and see the discussion in State v. Laster, 365 Mo. 1076, 293 S.W.2d 300, cert. denied Laster v. State, 352 U.S. 936, 77 S.Ct. 237, 1 L.Ed.2d 167. We do not consider it proper here to so interfere.

■ Counsel has asked that we review as "plain error" the action of the trial court in permitting the State to endorse on the information, at the beginning of the trial, the names of three additional witnesses. One of these was Elmer Coy who cashed the check and who was specifically named in the information; the other two merely produced records. This was a matter resting so completely within the discretion of the trial court, that we decline to consider it upon the theory of plain error resulting in "manifest injustice." Rule 27.20(c). See also, State v. Farris, Mo., 243 S.W.2d 983.

We find no error in those parts of the record which we are required to examine under Rule 28.02. The judgment is affirmed.

All of the Judges concur.