Scott SEARLES, Jr., Plaintiff-Respondent,

v.

Antonia Garcia SEARLES, Defendant-Appellant.

No. 25999.

Missouri Court of Appeals,
Kansas City District.

May 7, 1973.

Motion for Rehearing and/or Transfer
Denied June 4, 1973.

Application to Transfer Denied July 16, 1973.

Rosemary Scott, Grand Rapids, Mich., James H. McLarney, Clarence W. Crumpecker, Jr., Kansas City, for defendant-appellant; Swanson, Midgley, Eager, Gangwere & Thurlo, Kansas City, of counsel.

Robert Hines, Bear, Hines & Thomas, Columbia, for plaintiff-respondent.

Before SHANGLER, P. J., and SWOFFORD and WASSERSTROM, JJ.

WASSERSTROM, Judge.

The husband was granted a divorce in the trial court, together with custody of the child born of the marriage. The wife appeals, alleging the following points of error: (1) that the trial court should have stayed this proceeding in favor of a suit for separate maintenance, previously filed by her in Michigan; (2) that even if the trial court properly proceeded with the divorce action, it erred in exercising jurisdiction over the matter of child custody;

and (3) that the trial court denied her due process by requiring the case to be tried under the circumstances which existed.

## I

### THE DENIAL OF A STAY

With respect to the issue of whether proceedings should have been stayed in Missouri, the essential facts are as follows. For some period prior to their separation the parties maintained a family home in Missouri. In August, 1970, the wife left for Michigan, taking with her the son who was then ten years of age. The husband followed almost immediately in an effort to persuade his wife to return to Missouri, and on that trip he was served with summons in a suit for separate maintenance which the wife had just filed in the Michigan courts.

Thereafter, the husband applied to the Michigan court for custody of the child, temporary custody was awarded to him on November 13, 1970, and the husband returned with the child to the Missouri home. He then filed suit in the Circuit Court in Boone County, Missouri for divorce. The wife presented repeated requests that this Missouri divorce action be stayed in deference to her separate maintenance action pending in Michigan. The propriety of the rejection of those requests constitutes the question now for consideration.

Both parties agree that the Missouri court had jurisdiction and that the pendency of a suit in Michigan previously filed could not give rise to a plea in abatement. These propositions are established in this State by State ex rel. Miller v. Jones, 349 S.W.2d 534, l. c. 538 (Mo.App. 1961), which is in accord with the law generally throughout the country. See annotation "Stay of Civil Proceedings Pending Determination of Action in Another State or Country", 19 A.L.R.2d 301.

However, the wife contends that the trial court should have stayed the divorce action as a matter of discretion and that the refusal to do so constituted an abuse of discretion. As factors in favor of granting the stay, the wife relies on the fact that the Michigan proceeding had been filed first in point of time; that multiple litigation is wasteful and imposes unwarranted expense on the parties; and that the husband had appeared before the Michigan court and had sought and obtained affirmative relief by way of an award of temporary child custody. The wife further argues (although these additional facts were not introduced in evidence) that the parties had stipulated for a trial of the Michigan case to be held in December, 1971, and that certain medical examinations had been taken of both the husband and wife in preparation for that trial to be held in Michigan. On the other hand the husband relies upon countervailing factors as follows: litigating in Michigan would be unduly expensive, almost all the events leading to the separation occurred in Missouri, and virtually all the witnesses were located in Missouri.

Some of these factors are quite important, especially access to witnesses, and will be further discussed in connection with Point II of this opinion. However, for present purposes there is another point which is controlling and decisive; namely, that the Missouri proceeding could dispose of all issues between the parties, whereas under Michigan law the husband would not be able to have his claim for divorce adjudicated in that jurisdiction.

■ It is quite clear that the Missouri court should not exercise its jurisdiction in favor of staying the Missouri proceedings unless the husband (who was seeking relief in Missouri) could obtain the same full relief in the Michigan proceeding. Thus, in State ex rel. Miller v. Jones, 349 S.W.2d 534, l. c. 539 (Mo.App.1961) the court quoted with approval the rule that "[T]he court in which the second action is brought may in its discretion stay or suspend that suit, awaiting decision in the first one, or,

influenced by a spirit of comity, may refuse to entertain it, *if the same relief may be awarded in the prior suit.*" (emphasis added) This rule is emphasized in the annotation appearing in 19 A.L.R.2d 301, at p. 307, as follows:

"On the other hand, if additional or different issues or parties are involved in the domestic suit, so that the judgment recovered in the foreign suit would not constitute a bar to the prosecution of the domestic suit, or if the relief obtainable in the domestic suit is more advantageous to the plaintiff, the domestic suit is not vexatious or harrassing but is one brought by the plaintiff in the legitimate exercise of his undeniable right to bring a suit in any forum he may choose in which he may obtain service upon the defendant, and the refusal to grant the stay constitutes no abuse of discretion; and, conversely, its grant is an abuse of discretion."

In support of his contention that he was not permitted to file a counterclaim for divorce in the wife's pending Michigan action for separate maintenance, the husband cites Hatch v. Hatch, 323 Mich. 581, 36 N. W.2d 152, decided by the entire Bench of the Michigan Supreme Court in 1949. That case does unequivocally hold exactly what the husband here contends, the Hatch ruling being based upon a Michigan statute, M.S.A. § 25.89, § 9, M.C.L.A. § 552.9, which requires that the party applying for divorce must have resided in Michigan for one year immediately preceding the filing of his pleading. The Hatch decision holds that this applies even though the husband attempted to present his claim for divorce as a cross bill in a suit for separate maintenance which had already been properly filed by the wife.

The wife admits that the Hatch case so holds and further admits that it would be controlling here, except that she further contends that the Michigan statutes were amended in 1958 in such a manner as to vitiate the effect of the Hatch decision. A careful study of the Michigan statutes discloses that the 1958 amendment did not have the effect contended for by the wife. So far as is relevant here, the effect of the 1958 amendment was merely to rearrange the statutory provisions and to divide between § 25.89, § 9 and new § 25.89(1), M. C.L.A. § 552.9a, what had previously all been contained wholly within the former § 25.89, § 9.

The wife also argues that the husband would have been permitted to file a counterclaim for divorce under Michigan General Court Rule 203, which was adopted in 1963, subsequent to the Hatch decision. However, there is no attempt by the wife to show that the Michigan courts have any authority or had any intention by the adoption of Rule 203 to change the statutory jurisdictional rules in divorce actions which had been established by the legislature. Independent research discloses that the rule making power conferred on the Michigan Supreme Court authorizes it to prescribe procedure and practice but does not extend to a change in substantive rights. Michigan Constitution, 1908, Art. VII, § 5; Shannon v. Cross, 245 Mich. 220, 222 N.W. 168 (1928). The rule making power does not permit either the enlargement or restriction of jurisdiction given by a statute. Shannon v. Cross, supra; Washington-Southern Nav. Co. v. Baltimore & Philadelphia Steamboat Co., 263 U.S. 629, 635, 44 S.Ct. 220, 68 L.Ed. 480; Standish v. Gold Creek Mining Co., 92 F. 2d 662, 663 (C.A.9, 1937); Joiner and Miller, "Rules of Practice and Procedure: A Study of Judicial Rule Making", 55 Mich.L.Rev. 623, l. c. 629–630, 634 and 645.

■ Since the husband could not have obtained in Michigan the relief which he sought in this Missouri proceeding, the denial of a stay was not an abuse of discretion.

## II

## THE EXERCISE OF JURISDICTION OVER CHILD CUSTODY

The next issue for decision is whether the Missouri trial court, after deciding to proceed with the divorce itself, properly determined to proceed also with respect to the matter of child custody. What would otherwise have been an intricate problem in a very complicated area of law has been vastly simplified by the comprehensive and scholarly opinion on this subject by Judge Cross, speaking for this Court in Kennedy v. Carman, 471 S.W.2d 275 (Mo.App.1971). That landmark opinion, as will be seen, controls virtually every aspect of the situation here presented.

The first matter for inquiry on this branch of the case is whether Missouri has a proper basis for the exercise of jurisdiction. Any possible question in this regard has been fully dissipated by the Kennedy opinion. The decision holds at p. 279 that there are three generally accepted bases for jurisdiction in child custody proceedings. One of these bases is the domicile of the child, the second is personal jurisdiction over the parents, and the third is physical presence of the child. In this case, all three tests are met.

The wife here does not so much question the jurisdiction of the Missouri court to act, but rather the thrust of her objection is that the exercise of jurisdiction was an abuse of discretion. This contention must be rejected. As is demonstrated in great detail in the Kennedy opinion, the authorities are in general agreement that where more than one state has a proper basis for exercising jurisdiction in a child custody case, the choice of jurisdiction should depend upon the best interest of the child. The more modern cases, as well as legal writings on the subject, strongly urge that the best interest of the child will generally be served by the exercise of jurisdiction in that state where the evidence will be most readily available. As stated in the Kennedy opinion at p. 287:

"Factors principally to be considered in allocating jurisdiction include convenience of the forum for the litigants and maximum access to the relevant evidence. Opinion has been expressed that '(J)urisdiction should be conferred on those courts presumably best informed of the conditions affecting the child's welfare.' 53 Harvard Law Review 1025; and that 'A court's access to the relevant evidence is increased when most of the witnesses and pertinent physical locations are in the vicinity of the court * * *'. Ratner, Child Custody in a Federal System, p. 809."

The Ratner article, so referred to, states at 62 Mich.L.Rev. 795, l. c. 809:

"The welfare of the child is the first consideration in determining its custody; the natural desire of the parents to enjoy its society and participate in its upbringing is the second. An effective custody disposition requires an evaluation of the child's physic, emotional, and educational needs and the capacity of each parent to satisfy them. *This determination should, wherever feasible, be made by the court most likely to decide correctly, i. e., by the court having maximum access to the relevant evidence.* A court's access to the relevant evidence is increased when most of the witnesses and pertinent physical locations are in the vicinity of the court and when evidence and arguments are presented on behalf of each party in an adversary proceeding."

To the same effect is the very recent case Hawkins v. Hawkins, 504 P.2d 709, l. c. 718 (Or. banc 1972).

Applying this basic rule in the present case, Missouri plainly should be preferred over Michigan as the forum in which to decide this child custody case. Missouri is the place of the family domicile, it is the place where the boy went to school, and it is the place where he has received a considerable amount of psychological therapy resulting from the stresses produced by the strains in the family rela-

tionship. It is here that the neighbors, teachers and therapists' were located and who were the important witnesses who had to give the testimony required for an informed resolution of this important matter of custody.

Moreover, the young boy in question was living in Missouri at the time the Missouri case was called for trial and he was in the course of therapy at a Missouri medical facility. The interruption of that therapy by the boy having been taken to Michigan had proved deleterious and the pendency of the two proceedings by the parents was having a marked adverse effect upon his well-being. His welfare was best to be served by the promptest possible hearing, which, of course, was the proceeding ready to be heard in September in Missouri, rather than the Michigan proceeding which did not even have a setting until December. The particular facts here bring this case within the principle stated in the Kennedy opinion, 471 S.W.2d at pp. 287–288:

> "A court with technical jurisdiction should act to determine the custody of a child when (a) the child's welfare might be jeopardized if the court failed to act, * * *".

■ Still further, the exercise of discretion by the Missouri trial court in favor of its own jurisdiction finds support in the general maxim that when a court of equity acquires jurisdiction of a cause it will make full and complete adjustment of all rights. Peerless Supply Co. v. Industrial Plumbing & Heating Co., 460 S.W.2d 651 (Mo.1970). While divorce is a statutory action, it partakes of the nature of a suit in equity and equitable principles are generally followed. Franklin v. Franklin, 365 Mo. 442, 283 S.W.2d 483 (banc 1955); Nelson v. Nelson, 467 S.W.2d 306 (Mo. App.1971); Galst v. Galst, 188 S.W.2d 843 (Mo.App.1945). Still further calling for the same conclusion, the divorce statute, § 452.070 RSMo. 1949, V.A.M.S., provides that when a divorce is adjudged, "[T]he court *shall* make such order touching

* * * the care, custody and maintenance of the children, * * * as, from the circumstances of the parties and the nature of the case, shall be reasonable, * * *." (emphasis added).

■ Finally, on this branch of the case, the mother contends that this exercise of jurisdiction by the Missouri court constituted a violation of the full faith and credit clause of the United States Constitution, in that it failed to give proper recognition to the Michigan order of temporary custody. This contention is without merit. As stated in the Kennedy opinion 471 S.W.2d at page 285, there is considerable doubt whether the full faith and credit clause applies at all with respect to child custody decrees. However, it is not necessary in this case to explore that question definitively, since it is clear beyond doubt that the full faith and credit clause cannot apply here to a custody decree which was only temporary and interlocutory in nature. Cox v. Cox, 234 Miss. 885, 108 So.2d 422 (1959); Morris v. Morris, 197 N.W.2d 357 (Iowa 1972); Marlow v. Wene, 240 Cal. App.2d 670, 49 Cal.Rptr. 881 (1966); Hernstadt v. Hernstadt, 373 F.2d 316 (C. A.2d 1967).

Under all the circumstances of this case, the trial court did not commit an abuse of discretion in proceeding to adjudicate the child custody.

### III

### DUE PROCESS

The wife contends that she has been denied due process in violation of the Federal and State Constitutions for the reasons that (a) her counsel was given only six days to prepare for trial; (b) the court permitted and acted upon a stipulation of her counsel which was entered into without her authority; and (c) her Missouri counsel remained in the courtroom at the court's request and participated in the hearing without her authority.

(a) *With respect to the stipulation by counsel.* The subject of stipulation was an agreement under which the husband was permitted to amend the prayer of his divorce petition so as to ask for custody of the child, and a further agreement that the case might be transferred back to Boone County for trial. This stipulation by the wife's original Missouri attorney, Mr. Smith, was within the scope of the general implied authority of an attorney to handle all matters pertaining to procedure. As ruled in State ex rel. A.M.T. v. Weinstein, 411 S.W.2d 267, 1. c. 272 (Mo.App. 67):

> "The rules of law applicable to principal and agent control the relation between an attorney and his clients. It needs no citation of authorities to show that where an attorney appears for parties in an action, his appearance is recognized by the court and his authority will be presumed, to the extent of giving validity to the proceedings.
>
> \* \* \* \* \* \*
>
> "His acts and appearances are those of his clients and are regarded as having been done by, and binding on, the clients. The procedural acts of the attorney, done in the regular and orderly conduct of a case, are binding on the clients. 7 Am.Jur.2d, Attorneys at Law, § 120, p. 120."

Likewise in Robinson v. DeWeese, 379 S.W.2d 831, 1. c. 836 (Mo.App.1964), this Court held that an attorney has implied or apparent authority as to matters which relate to procedure and remedy. Furthermore, the stipulation by Mr. Smith was never disclaimed during the course of trial, and defendant's second Missouri attorney expressly later concurred in the trial proceeding in Boone County instead of Callaway County. The objection now made by the wife's third Missouri counsel, to the stipulation of her original Missouri counsel, must be rejected.

(b) *With respect to the refusal of further continuance.* The situation under which this case was finally tried was most unusual and requires some explanation. The Missouri case was originally set for trial in Boone County on June 1, 1971. Just prior to that date, the wife by her first Missouri counsel Mr. Smith obtained a change of venue on the allegation of prejudice by the inhabitants of Boone County. On transfer to Callaway County, the husband appeared on June 21 and obtained a new trial setting for September 21, 1971. Not until September 13, 1971, did Mr. Smith file a motion in the Circuit Court of Callaway County to stay those proceedings. That motion was overruled, and the case was reset to October 5 in order to accommodate Mr. Smith.

After that appearance, Mr. Smith withdrew as counsel and on the trial date October 5 an entry of appearance was made on behalf of the wife by a new counsel Mr. Simon, who thereupon orally requested additional time. The court at this juncture reset the case for October 11, emphasizing at the same time that the case would be tried on this new date.

On October 11, the trial date so set, Mr. Simon appeared, together with the wife's Michigan counsel Ms. Scott. At that time Ms. Scott attempted to secure a reconsideration of the request for a stay of the Missouri proceedings in deference to the Michigan proceedings. When the trial court again denied a stay, Ms. Scott announced her withdrawal and her intention to leave the courtroom. The wife also would have left except for the fact that she was placed under subpoena as a witness by the husband. Mr. Simon announced, and by interrogation of his client proved, that the wife would not authorize him to introduce evidence or to even cross examine the husband's witnesses, which Mr. Simon made clear was a position which his client was taking contrary to his advice. Thereupon, Mr. Simon asked leave to withdraw, but the court requested that Mr. Simon remain. It was clearly understood that his presence and participation would be without prejudice to the wife's rights.

Under the circumstances described, there was no abuse of discretion in not granting the wife further time to prepare for trial. In view of everything which had transpired, the court had already extended sufficient indulgence. Aside from everything else, there was no proper request in writing for a continuance supported by affidavit in accordance with the provisions of Rule 65.03 V.A.M.R. and § 510.090 RSMo 1969, V.A.M.S.; and in the absence of this compliance, there was no abuse of discretion in denying a continuance. Kinsella v. Kinsella, 353 Mo. 661, 183 S.W.2d 905 (1944); Carr v. Carr, 308 S.W.2d 357 (Mo.App.1957); McGinley v. McGinley, 170 S.W.2d 938 (Mo.App.1943).

Even if nothing else had preceded, the giving of six days notice for trial is not in itself a violation of due process. The six days here was three times longer than the notice given in Vaughn v. Ripley, 446 S.W.2d 475 (Mo.App.1969), where this Court held that even a two-day notice was not to be considered prima facie unreasonable.

(c) *With respect to the participation in the trial by Mr. Simon.* The court's request that Mr. Simon remain in the case cannot be considered prejudicial to the wife. The record shows that this action was taken by the court with the distinct understanding that his participation would be without prejudice to the wife's rights. Furthermore, this representation was without cost to the wife, an allowance being made for Mr. Simon's attorney's fees at the close of the trial to be added to the costs payable by the husband. Certainly the wife has no legitimate objection to not being otherwise or further represented, since her Michigan counsel was also present at the commencement of trial, but left according to her own decision and pursuant to what she conceived to be the strategic best interest of the wife. To the extent that the wife was not fully represented at the trial, this was a situation of her own making. Anything done by Mr. Simon under these difficult circumstances could only be to her benefit, not to her harm.

This discussion of the due process contention very possibly has given undue dignity to this attempt at raising a constitutional point. The wife's effort here reflects a regrettable tendency by too many litigants appearing before this Court to try to convert ordinary points of procedural law into matters of constitutional magnitude. It should be remembered that very few claims of error qualify as constitutional questions and that "[I]f the mistake is not so gross as to be impossible in a rational administration of justice, it is no more than the imperfection of man, not a denial of constitutional rights." 16 Am. Jur.2d, Constitutional Law, § 554, P. 957. See also Campbell v. St. Louis Union Trust Co., 346 Mo. 200, 139 S.W.2d 935, 1. c. 939 (banc 1940).

There being no error, the judgment of the court below is affirmed.

All concur.

SOMERVILLE, J., not participating because not a member of court at time of hearing.