**STATE of Missouri, Respondent,**

v.

**Henry J. TSCHIRNER, Appellant.**

**No. KCD 26334.**

Missouri Court of Appeals,
Kansas City District.

Dec. 3, 1973.

Motion for Rehearing and/or Transfer
Denied Jan. 4, 1974.

Application to Transfer Denied Feb. 11, 1974.

Roy W. Brown, Kansas City, for appellant.

Ralph L. Martin, Pros. Atty., Robert Frager, Asst. Pros. Atty., Kansas City, for respondent.

Before SHANGLER, P. J., and SWOFFORD and WASSERSTROM, JJ.

WASSERSTROM, Judge.

Upon an information filed in a magistrate's court charging violation of § 559.353 RSMo 1969, V.A.M.S. defendant was found guilty of child abandonment and nonsupport, and was sentenced to thirty days in the County jail with a suspension on condition of his paying $10.00 per week toward support of the child. Defendant appealed and was tried de novo before a jury in the circuit court. From a jury verdict of guilty and a consequent fine of $1,000.00, defendant appeals to this Court.

This child in question was born on June 25, 1970, to Sharon Sullivan. The uncontradicted evidence was that Sharon and the defendant began living together in September, 1969, and continued to do so to at least the middle of December, 1969. Sharon testified that during that period of time they had sexual intercourse together, and she further testified that she did not have sexual relations with any other man. Defendant admitted in his testimony that during the period mentioned he and Sharon shared the same bedroom and the same bed.

In November, 1969, Sharon learned definitely that she was pregnant and so advised the defendant. Sharon and two other witnesses who appeared for the State testified that about Thanksgiving of 1969 defendant admitted that he had a 50-50 responsibility for the unborn child. Sharon and two other witnesses for the State also testified that on an occasion on December 7, 1969, defendant put his arm around Sharon and stated that since they were going to have a baby they had decided to get married.

Defendant and Sharon separated in January, 1970. Thereafter, and shortly before the birth of the baby, defendant went to Europe, where according to his own testimony, he was employed by a PX in Munich. After his return from Europe in the Fall of 1970, he met with Sharon, at which time she asked for financial help. One of the State's witnesses, Diana Dudley, testified that thereafter defendant spoke to her about his problem in deciding what his responsibility was for financial help to "his son". However, no financial help was ever forthcoming from defendant to Sharon for the child.

Defendant raises nine points of alleged error, none of which merits any disturbance of the verdict and sentence.

I

For his first point, defendant claims that an element of the State's case was proof that at some point he had custody and control of the child, and that in absence of such a showing the conviction cannot stand. This contention would have been correct in Missouri until 1953. Until that date, and especially under the ruling in State v. White, 363 Mo. 83, 248 S.W.2d 841 (Mo.1952), the Missouri decisions recognized a distinction between the obligation for the support of an illegitimate child as compared to a legitimate child, and with respect to the former, the father could not be held responsible for support absent a showing that he had assumed custody and care. However, this result was changed by a legislative amendment in 1953, when former § 559.350 was amended to insert the following: "[I]t shall be no defense to such charge that the father does not have the care and custody of the child or children * * *".

Defendant argues that the old rule of the White case has been reinstated by reason of a further amendment to the statute in 1965 whereby old § 559.350 was divided into what has now become §§ 559.353 (under which the present case was brought) and 559.356. Defendant's argument in this respect need not be analyzed in detail, since the result of that argument runs directly counter to the decision of the Missouri Supreme Court in R. . . v. R. . ., 431 S.W.2d 152 (Mo.1968), which was decided after the date of the statutory amendment upon which defendant relies. In that case, the court reviewed certain United States Supreme Court decisions construing the equal protection clause of the Federal Constitution, and concluded that under these new interpretations of the equal protection clause certain former Missouri decisions, including the White case, should no longer be followed. Moreover, and of controlling importance here, the court held that a distinction should no longer be drawn between legitimate and illegitimate children under certain specified statutes, among which the Supreme Court included § 559.353, the very statutory section presently involved in this case. In this connection, the opinion in R. . . v. R. . . holds at l. c. 154:

> "The decisions of the United States Supreme Court compel the conclusion that the proper construction of our statutory provisions relating to the obligations and rights of parents (§§ 452.150, 452.-160, RSMo. 1959, § 559.353, RSMo. 1967 Supp., V.A.M.S.) affords illegitimate children a right equal with that of legitimate children to require support by their fathers. Prior cases to the contrary are no longer to be followed."

See also In re L, Part II, 499 S.W.2d 490 (Mo.banc 1973).

■ Accordingly, defendant may be held responsible for support of this child, once it is proved that he is the father, regardless of whether he ever had legal care or custody.

## II

■ Defendant next complains that the State failed to prove that he was able to provide for the child. The State's evidence on this element was that defendant had been gainfully employed before the birth of the child; that he was gainfully employed in Germany after the birth of the child; that he purchased a motor cycle, a jeep and stereo tape deck or component system; that he was an officer of Technical Materials Company and had an interest in a publication Kansas City Entertains; and that he had performed the voice track for a certain commercial advertisement. This evidence is sufficient to support a finding of financial capacity to make provision for the child and serves to distinguish this case from State v. Nelson, 463 S.W.2d 614 (Mo.App.1971), upon which defendant relies. See State v. Roseberry, 283 S.W.2d 652 (Mo.App.1955).

## III

Defendant contends next that instruction No. 4 was erroneous in that it failed to submit an adequate converse instruction. This argument arises from the fact that defendant requested in general terms that the trial court give a converse instruction, but defendant did not submit any particular requested instruction for the court's consideration. Notwithstanding this failure by defendant to submit a form of instruction requested, the trial court did formulate and give an instruction advising the jury that they should find for defendant if they did not find and believe that defendant was the father of the child in question. Defendant now argues that this converse instruction No. 4 should have gone still further and should have instructed the jury to find for defendant if they did not believe he had the ability to provide child support.

■ Defendant has no standing to complain as to the form of the converse instruction given, since he did not submit any particular instruction for the court's

**306**

consideration. In view of that failure, there was a sufficient converse of all elements by the usual tail to the State's main instruction: "And, unless you find the facts to be as above stated, you are instructed to acquit the defendant". State v. Caldwell, 423 S.W.2d 738, 741 (Mo.1968); State v. Hill, 438 S.W.2d 244, 249 (Mo. 1969).

Furthermore, the converse instruction given by the court did submit to the jury the one and only issue upon which defendant chose to pitch his defense. Defendant's counsel had told the jury at the very beginning: "The very issue is is this man the father of the baby that was born to this woman on June the 25, 1970?" Along the same line, during one of the conferences in chambers, the trial judge remarked without any objection or correction by defense counsel that: "really, the single issue in the case is whether or not this defendant is the father of the child * * *". Still further, when the defendant took the stand, his testimony was confined to a denial of paternity. Finally, in closing argument to the jury, defense counsel stated: "Now, there is no evidence in this case that he ever was really able to support this child, but I just want to mention this to you, *that's not our defense*, our defense is this child is not his and the State has not proved it." (emphasis added).

In view of the nature of the defense made in this case, the trial court was entirely fair in the converse instruction given, and indeed went considerably beyond what was legally required.

**IV**

Defendant next argues that the information is fatally contradictory in three different respects.

■ A. The first contradiction found by defendant is the allegation that defendant is "the lawful father" while at the same time the information also alleges that the child was "born out of wedlock". While the information is inept in this respect, the discrepancy mentioned is immaterial. For reasons already discussed in Section I of this opinion, it no longer makes any difference whether this child be legitimate or illegitimate so far as the obligation of the father to support is concerned. Accordingly, both phrases called to attention by the defendant may be disregarded as surplusage. State v. Rapp, 412 S.W.2d 120, 123 (Mo.1967); State v. Sykes, 436 S.W.2d 32, 35 (Mo.1969); State v. Beck, 449 S.W.2d 608, 611 (Mo.1969).

■ B. Defendant also seeks to find a contradiction in that the information alleges child abandonment and also nonsupport of the child. This in not objectionable under the rule of State v. Osborne, 413 S.W.2d 571 (Mo.App.1967).

C. Another matter of which defendant complains in his argument under this point is not really any contradiction of any kind in the information. Defendant points out that the State's main instruction No. 3 is devoted to the issue of non-support. On the other hand, instruction 10 stated to the jury that it might find defendant guilty of "child abandonment" and the jury verdict did in fact find defendant guilty of "child abandonment". From this, defendant argues in the argument portion of his brief that there is a fatal conflict between instruction 3 on the one hand with instruction 10 and the verdict on the other hand.

■■ This claim of conflict cannot be considered because not property included in the Points Relied On. Rule 84.04(d), V. A.M.R. Nor is this a matter of such manifest injustice or miscarriage of justice as to require notice thereof as "plain error" under Rule 27.20(c).

**V**

■ Defendant for his fifth point claims that instruction 5 is erroneous in stating to the jury that "it shall be no defense to such charge that some person or

organization other than the defendant has furnished food, clothing, lodging, medical or surgical attention for said * * * child". Defendant's argument is that this language appears in § 559.356, but not in § 559.353, under which the present prosecution is brought.

Although § 559.353 does not use precisely the same language that appears in instruction 5, the same concept is covered by the following provision of § 559.353: "Any man who, without good cause, * * * fails * * * to provide * * * for his child * * * *whether or not* * * * *the child by reason of such failure* * * * *actually suffers physical or material want or destitution,* is guilty of a misdemeanor * * * *". (emphasis added) Instruction 5, regardless of the exact language, was correct in substance.

## VI

Defendant's sixth point complains that the trial court permitted the State to endorse three additional witnesses on the information on the day set for trial and that the continuance thereupon granted in response to defendant's request was inadequate for defendant's further preparation.

▮ Permitting the additional witnesses to be endorsed was primarily a matter of discretion for the trial court. State v. Cobb, 444 S.W.2d 408, 415 (Mo.banc 1969); State v. Strawther, 476 S.W.2d 576, 579 (Mo.1972). So also, whether or not to grant a continuance and the length thereof, is a matter generally within the broad discretion of the trial court. State v. Cuckovich, 485 S.W.2d 16, 21 (Mo.banc 1972); State v. Brown, 480 S.W.2d 843, 845 (Mo.1972); State v. Drope, 462 S.W. 2d 677, 684 (Mo.1971). The circumstances of the present case do not indicate any abuse of those discretions. The record shows that defendant's counsel was not taken by any great surprise with respect to these additional witnesses, since they had testified at the trial in the magistrate court and the same counsel who represented de-

fendant in the circuit court heard the testimony and cross-examined those witnesses in the magistrate trial. Moreover, the trial of this case in the circuit court had already been delayed by a number of continuances at the defendant's request.

Defendant argues that these procedural rulings deprived him of constitutional due process. These purely procedural questions cannot be transmuted to a higher value by the alchemy of couching the objection in constitutional terms. Searles v. Searles, 495 S.W.2d 759 (Mo.App.1973).

## VII

Defendant argues next that the trial court erred in overruling his objection to Sharon Sullivan sitting at the counsel table during his cross-examination. Defendant argues that the court had ordered a separation of witnesses and that Miss Sullivan was just as much subject to that rule as any other witness. On the other hand, the State argues that the prosecuting attorney needed the assistance of Miss Sullivan in order to properly conduct cross-examination of the defendant, and the State emphasizes that Miss Sullivan had already completed her testimony and was not thereafter recalled for any rebuttal testimony.

▮ Whether or not witnesses should be separated and excluded from the courtroom except during their own respective testimony lies almost entirely within the discretion of the trial court. Moreover, even when the rule is invoked, an exception is not infrequently made on behalf of a prosecuting witness. Thus, in State v. Supinski, 378 S.W.2d 602, l. c. 605 (Mo. App.1964) the trial court permitted the prosecuting witness to remain in the courtroom after his testimony was completed, and this ruling by the trial court was sustained on appeal:

"Segregating or requiring exclusion of the witnesses from the courtroom during trial, or 'putting them under the rule,' as it is sometimes called, is a matter which

rests almost entirely in the trial court's discretion. It has also been recognized from an early day that the trial court may, in its discretion, except individual witnesses from its order of exclusion to meet the needs of a particular situation, and this includes prosecuting witnesses and officials of the court. The rule may be ' * * * so molded as to meet the requirements of justice in each particular case,' State v. Hughes, supra, 71 Mo. [663] at 636, and we can perceive no abuse of the trial court's discretion in this case."

 In the Hughes case, referred to by the court in Supinski, the Supreme Court in the course of ruling that prosecuting witnesses might remain in the courtroom, commented that "their presence was doubtless necessary to enable the prosecuting attorney to properly conduct the prosecution". This comment in the Hughes case infers that the prosecuting witnesses there did in fact sit at the counsel table just as Miss Sullivan was permitted to do in this case. In any event, the ruling here must be sustained under the broad principle that except to the extent that a specific statute or rule regulating the procedure provides otherwise, the conduct of the trial generally rests within the trial court's discretion. State v. Pinkston, 333 S.W.2d 63, 66–67 (Mo.1960); State v. Johnson, 485 S.W.2d 106, 117 (Mo.1972); 23 C.J.S. Criminal Law § 961, p. 836.

### VIII

For his eighth point defendant contends that the trial court erred in sustaining the State's objection to the defendant's attempt to argue the meanings of the words "lawful" and "illegitimate". As alalready discussed under Sections I and IV A of this opinion, the legitimacy or illegitimacy of the child in question is immaterial. The sustaining of an objection to argument concerning those terms was therefore not error.

Defendant also contends that this limitation upon his closing argument constituted a denial of due process. What has already been said concerning the constitutional argument under Section VI of this opinion also applies here.

### IX

Finally, defendant contends that the trial court erred in not sustaining a motion for a new trial on the ground that the verdict was against the greater weight of the evidence and the result of bias and prejudice, and in support he attacks the credibility of the State's witnesses. This point raises nothing for review. Whether the verdict was against the weight of the evidence must be addressed solely to the trial court. State v. Thomas, 393 S.W.2d 533, 538 (Mo.1965). The credibility of witnesses and the weight of the testimony are within the province of the jury and are not matters for review on appeal. State v. Cannon, 486 S.W.2d 212, 214 (Mo.1972); State v. Wright, 476 S.W.2d 581, 584 (Mo.1972).

The judgment is affirmed.

All concur.