STATE of Missouri, Plaintiff-Respondent,

v.

Ronald Lee FLYNN, Defendant-Appellant.

No. 37048.

Missouri Court of Appeals,
St. Louis District,
Division Two.

Sept. 7, 1976.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, Brendan Ryan, Circuit Atty., Nels C. Moss, Jr., Asst. Circuit Atty., St. Louis, Sheila K. Hyatt, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

STEWART, Judge.

Defendant was convicted of second degree murder by a jury and his punishment was assessed at 23 years imprisonment. He appeals from the judgment entered in accordance with the verdict. We affirm.

Defendant lists some ten allegations of error on the part of the trial court.

We shall first consider defendant's contentions numbered VII and VIII because they are interrelated. He urges that the court erred in (1) overruling defendant's motion for judgment of acquittal because there was neither sufficient nor substantial evidence of a felonious intent on the part of defendant to shoot the victim and (2) in giving the verdict directing instruction on murder in the second degree because there was no evidence to support the requested finding that defendant "intended to take the life of the [victim]."

In determining whether there was sufficient substantial evidence to warrant submission of murder in the second degree we review the evidence and the reasonable inferences therefrom in the light most favorable to the State. *State v. Hicks,* 438 S.W.2d 215[1] (Mo.1969).

On the afternoon of February 20, 1973, Robert Cobbs was shot and killed by defendant in defendant's apartment at 4471 Laclede, in the City of St. Louis. About a week before the shooting defendant turned over some marijuana to Cobbs upon assurance that Cobbs would sell it for him. He also loaned Cobbs a gun. Cobbs did not return the gun, nor the money for the marijuana. On the day before the shooting, defendant told Cobbs he wanted his money for the marijuana and the gun. Cobbs replied he did not have it, but would have it the following day.

Brady, Brady & Devereaux, St. Louis, for defendant-appellant.

On the day of the shooting, defendant, Cobbs and James Jamerson were in defendant's apartment. Defendant took a revolver from his night stand, opened the chamber, held it up and looked into the cylinder. He then closed the chamber, spun the cylinder around, and pointed the gun at Cobbs's head. Cobbs was about two feet from defendant at that time. Defendant said something about Russian roulette and pulled the trigger twice while Cobbs protested, "Don't point that at me." When he pulled the trigger the third time the pistol fired and the bullet struck Cobbs in the forehead causing his death.

Defendant threw the gun to Jamerson and told him to "get it out of here." Jamerson left with the gun. Defendant then called the police. Before the police arrived he tore a hole in a screen in a window and threw five live cartridges out the hole onto the ground below. When the police arrived he told them that he and Cobbs and another person, whom he would not identify, were standing in the room when he heard a shot that sounded as though it came from outside. He looked toward the window and caught a glimpse of someone going down the steps. When asked about the screen he said that he had cut the hole so his cat could get in and out. After the police spoke with other persons in the building defendant was arrested for murder. A warrant was applied for and refused. Defendant was released from custody on the morning of February 21, and left St. Louis for Chicago, and, then on to Canada. The police learned the identity of James Jamerson and questioned him on February 22. An arrest warrant was then issued for the defendant.

In November of 1973 defendant was arrested in Canada. At that time he admitted that he shot Cobbs.

At the trial defendant interposed the defense of excusable homicide by reason of accident. Defendant testified that he was playing with the gun; that he opened the chamber and emptied what he thought was the entire load of six bullets from the gun into his hand. He did not look at the bullets or count them. He placed the bullets that were in his hand into his pocket. He then pointed the gun in the direction of Cobbs and when he did so the gun discharged. The gun was cocked and his finger was on the trigger at the time. He did not think that he exerted sufficient pressure on the trigger to discharge the gun.

■ Intent is a state of mind and ordinarily is not susceptible of direct proof. It may, and in most instances must be, inferred from the circumstances. *State v. Faber*, 499 S.W.2d 790 (Mo.1973). The jury must make its determination by the act and by the surrounding circumstances. "Where one uses a weapon likely to produce death in making an assault upon another, and death ensues, the one who commits the act is presumed to intend death." *State v. Hammonds*, 459 S.W.2d 365, 368[1–4] (Mo. 1970). There was, in fact, a bullet in the gun. Whether defendant knew that there was at least one bullet in the cylinder was a question of fact for the jury. According to defendant's own testimony he had some bullets from the gun in his hand before he shot Cobbs; the jury was not required to believe that he did not count them. Jamerson testified only to the fact that defendant opened the chamber and looked into the cylinder. He did not testify that any bullets were removed from the gun. Defendant leveled the gun at Cobbs's head, cocked and pulled the trigger three times before it discharged. He disposed of the gun, told the police that he had not fired the shot and subsequently fled. From all of the circumstances surrounding this killing there was sufficient substantial evidence to warrant a jury in finding that defendant had the necessary intent to convict him of murder in the second degree. The questions of whether the shooting was accidental or intentional were factual questions which were submitted to the jury for its determination.

Defendant does not attack the form of the instruction submitting murder in the second degree. Having found that there was sufficient substantial evidence to warrant submission of the charge it necessarily follows that the court was warranted in

submitting the instruction on murder in the second degree.

■ Defendant contends that the State failed to prove the essential requirement of venue. Venue need not be proved beyond a reasonable doubt but may be established from the facts and circumstances in evidence. *State v. Minnix*, 503 S.W.2d 70 (Mo. App.1973). In this case the crime occurred at 4471 Laclede Avenue. Three witnesses testified that they went to the scene of the crime at 4471 Laclede Avenue "in the City of St. Louis." This direct evidence sufficiently establishes that the crime was committed in the City of St. Louis.

■ The defendant complains that the trial court erred in admitting into evidence the fact that defendant gave marijuana to Cobbs to be sold because it constitutes proof of another crime having no relation to the crime with which he was charged. As a general rule the proposition espoused by defendant is correct. *State v. Reese*, 364 Mo. 1221, 274 S.W.2d 304 (banc 1954). However, as one of the five exceptions to the general rule, proof of the commission of other crimes is admissible if such proof goes to the question of the motive. *State v. Knupp*, 507 S.W.2d 360 (Mo.1974). Motive is an incentive to action. Here the evidence that defendant gave Cobbs the gun and some marijuana to be sold, coupled with the fact that Cobbs did not turn over the money for the marijuana, would tend to prove that defendant had a motive for the killing. De-

fendant, in a statement to the Canadian police officers, conceded that the police would feel he had a motive for the killing, because it was well known that "I was looking for this cat as he had ripped me off in a drug deal . . ." The court did not err in admitting the evidence of the transaction respecting marijuana.

Defendant next attacks Instruction Number 8 [1] (MAI–CR 2.28) which was given by the court on the issue of excusable homicide and contends that the court erred in refusing to give Instruction "A". Instruction A differs from Instruction 8 only as to paragraph 2.[2]

The specific point sought to be raised by defendant reads:

### IX

"The trial court erred in refusing to give defendant's instruction A, on excusable homicide, because the instruction given, instruction number eight, did not sufficiently define excusable homicide as required by the Missouri approved instruction number 2.28. MAI–CR 2.28; Notes on Use."

In the argument portion of the brief defendant argues that the description of "the lawful act by lawful means" as filled in by the court in submitting MAI–CR 2.28 did not sufficiently describe that act. (See the emphasis in footnotes 1 and 2). He contends that Instruction A contained a proper description and should have been given.

1. "One of the issues in this case is whether the death of Robert Cobbs was an excusable homicide. By 'excusable homicide' is meant the killing of another by accident or misfortune under the circumstances submitted in this instruction. On that issue you are instructed as follows:

1. The State has the burden of proving beyond a reasonable doubt that the death of Robert Cobbs was not an excusable homicide. The defendant is not required to prove that the death was excusable. If the death was an excusable homicide, or if the evidence in this case leaves in your mind a reasonable doubt as to whether the death was an excusable homicide, then you must find the defendant not guilty.

2. You will acquit the defendant on the grounds of excusable homicide and return a

verdict of not guilty if the death of Robert Cobbs was the result of an accident or misfortune in that *the defendant handled a gun which discharged and caused the death of Robert Cobbs* without unlawful intent and without reckless disregard for human life and safety." (emphasis added)

2. "2. You will acquit the defendant on the ground of excusable homicide and return a verdict of not guilty if the death of Robert Cobbs was the result of an accident or misfortune in that *the defendant was playing with a pistol which he believed to be unloaded and had no intention of pointing the pistol at Robert Cobbs in a threatening* manner and further that the defendant acted without unlawful intent and without reckless disregard for human life and safety." (emphasis added)

A general objection was made to the instructions prior to the time that the court read the instructions to the jury. In the motion for new trial defendant charged that the court erred in refusing to give Instruction "A" because "It is incumbent upon the Court to adequately and fully define 'accident' as given in Instruction Number Eight (8)."

■ Considering these matters in inverse order it is at once apparent that the error alleged in point IX was not presented to the trial court for its consideration in the motion for a new trial. Matters not presented to the trial court in the motion for new trial may not be presented for the first time upon appeal. The point relied on presents nothing for our appellate review. *State v. Martin,* 451 S.W.2d 96, 99[3] (Mo.1970); Rule 27.20(a). *State v. Rennert,* 514 S.W.2d 579 (Mo.1974).

■ The issue contained in the argument portion of the brief which did not follow the point relied on likewise presented nothing for our review. Rules 84.04(d) and 84.04(e). *State v. Tschirner,* 504 S.W.2d 302[7] (Mo. App.1973).

■ Defendant next contends that the court erred in refusing to give instructions identified as "B"[3] and "C"[4]. "B" contains a definition of accident, "C" contains a definition of "accidental homicide." We note first that "accidental homicide" is not a phrase contained in any instruction submitted and therefore has no relevancy to the issues raised. Defendant contends that the word "accident" used in Instruction 8 (MAI–CR 2.28) required further definition. This case was tried after MAI–CR became effective. The general purpose of MAI–CR was to standardize and simplify instructions to provide for uniformity in instructions in criminal cases throughout the State. In formulating the instructions, "words and phrases were selected for use which have a readily understandable meaning." *State v. Abram,* 537 S.W.2d 408, 410 (Mo.banc 1976). Rule 20.02(a) sets out three categories of instructions. (1) Those that must be given though not requested. These include MAI–CR 2.03 and those instructions in the 2.00 series MAI–CR, where applicable under the law to the facts and where required by Rule 26.02(6)[5], and the verdict directing instructions in the 6.00 to 14.00 series. (2) Those that must be given if requested. These are MAI–CR in the 3.00 series. (3) Those that are discretionary. These are MAI–CR in the 4.00 series. These may be given or refused by the court even though a request has been made.

It is apparent from Rule 20, MAI–CR and the Committee Comments[6] that MAI–CR was intended to perform the same function as MAI. Counsel may not be permitted to improve upon the approved instructions "even within the confines of specific precedents." MAI p. XXVII.

3. "You are further instructed that 'accident' as discussed in Instruction No. _____ is defined as anything that happens unexpectedly, without design, or by chance."

4. "You are further instructed that an 'accidental homicide' as discussed in Instruction No. _____ is defined as an unintentional taking of human life."

5. "(6) In all criminal cases the court, whether or not it shall have been requested so to do by either party, must instruct the jury in writing upon all questions of law necessary for their guidance in returning their verdict which shall include whenever necessary the subjects of good character and reasonable doubt. In all felony cases failure so to instruct shall be good cause for setting aside a verdict of guilty by the jury and granting a new trial."

6. ". . . Therefore, the Committee recommended that trial judges follow these simple rules:

   1. Give instructions on 'the law of the case' whether requested or not, using the forms approved.
   2. Give instructions in the 3.00 Series if requested, using the patterns there even if an instruction is tendered in an improper form.
   3. Give or refuse cautionary and other discretionary instructions without fear of reversal.

   The beauty of this solution is that it takes a considerable amount of concern and responsibility from the shoulders of the trial judge. He will not be required to decide anything more than whether the requested charge has evidentiary support."

   *Committee Comments,* "Forward," at 11–12.

In view of the fact that the MAI–CR have been drawn so as to be readily understood by ordinary lay citizens the Supreme Court has admonished that instructions submitting definitions are "to be avoided." *State v. Abram, supra,* at 411. The Supreme Court in approving MAI–CR did not provide for an instruction defining the word "accident" in the category of instructions required to be given or required to be given upon request. Such an instruction is not necessary whether requested or not and in fact should not be given. It follows that the court did not err in failing to give Instructions "A" and "B" requested by defendant.

 Defendant charges that the court erred in denying his motion to suppress statements made by him to police officers of the City of St. Louis and to Canadian officers. This issue is not before us for our review.

Defendant initially raised the issue by presenting his motion to suppress statements outside the hearing of the jury prior to commencement of the trial. Sgt. Antoon, a St. Louis detective, and Officer Hughes, of Calgary, Alberta, Canada, testified with respect to statements made to each of them by defendant. Experienced trial counsel, in a tactical decision, did not object to the statements when they were introduced into evidence at the trial. Rather, on cross-examination of each of the police officers, he elicited testimony favorable to his client. The issue was raised again in the motion for new trial. To preserve an issue such as this for appellate review it is necessary that timely objection be made at the time the evidence is offered during the trial. *State v. Johnson,* 536 S.W.2d 851, 854[1, 2] (Mo.App.1976). We may not consider this issue.

 Defendant's points IV [7] and VI [8] do not comply with the mandate of Rule 84.04(d) and do not present anything for our consideration. Point IV does not tell us wherein and why it is contending that the court erred. Point VI does not "state briefly and concisely what actions or rulings of the court are sought to be reviewed." 84.-04(d). *State v. Davis,* 516 S.W.2d 784 (Mo. App.1974).

Finding no error the judgment is affirmed.

CLEMENS, P. J., and DOWD, J., concur.

---

7. "The trial court erred in prohibiting defense counsel from ascertaining from witness, Philip Antoon, whether in defendant's statement to him there was any indication that there had been an argument between defendant and the victim, Robert Cobbs, on the date of the shooting."

8. "The trial court erred in allowing prejudicial hearsay statements in evidence in the testimony of witnesses for the state, Philip Antoon, Artis Dease and James Jamerson."